

ATTORNEY FOR APPELLANT

Denise F. Hayden
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Judy M. Tyrrell
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Timothy Kendrick, <br> *Appellant*, <br><br> v. <br><br> Angela Kendrick, <br> *Appellee*. | September 22, 2015 <br><br> Court of Appeals Case No. 49A02-1412-DR-888 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable John F. Hanley, Judge <br><br> The Honorable Christopher B. Haile, Magistrate <br><br> Trial Court Cause No. 49D11-1312-DR-44394 |

**Brown, Judge.**

Timothy Kendrick ("Husband") appeals from the trial court's decree of dissolution of marriage. He raises one issue, which we revise and restate as whether the court abused its discretion in ordering him to make monthly equalization payments to Angela Kendrick ("Wife") prior to the distribution of his pension benefits. Wife raises one issue on cross-appeal, which we revise and restate as whether the court abused its discretion in determining and distributing the marital estate. We affirm in part, reverse in part, and remand.

*Facts and Procedural History*

Husband and Wife were married in September 1995. On December 12, 2013, Husband filed a petition alleging that the parties lived together until they were separated on or about November 8, 2013, and have not since lived together as husband and wife and requesting the dissolution of the marriage.

On October 29, 2014, the court held a final dissolution hearing at which the parties presented evidence and argument related to the value of the marital property, including the parties' vehicles, debt, the marital residence, and Husband's retirement accounts. The evidence included a valuation report prepared by Financial Evaluations, Inc., related to Husband's retirement through the Public Employees' Retirement Fund ("PERF"). The report stated that Husband's retirement through PERF consisted of two components, a defined benefit pension and a defined contribution annuity savings account. The report also stated that the defined benefit pension required ten years to vest and, in its standard form, was single life payable at age sixty-five with a five year guarantee. The report stated that, with over fifteen years of service, the

normal retirement age is sixty with no actuarial reduction for age and that, if the employee is at least age fifty-five and the employee's years of creditable service plus age at retirement equals eighty-five, the employee is entitled to an immediate annuity.

[4] The report stated that the purpose of the report was to "form a professional opinion as to assets (present) value of the accrued PERF pension benefit (normal retirement option: $950.79 per month at age 60.03 and life thereafter) existing on the date of valuation (12/12/2013)" and to "compute the coverture fraction and to estimate the portion of the pension which was earned during the marriage." Petitioner's Exhibit 1 at 2. In its findings, the report stated that the present value of the defined benefit pension annuity starting at age 60.03 and continuing through the retiree's projected death was $172,285.30 and that the amount earned during the marriage, based on a coverture fraction of 67.4658 percent, was $116,233.64. In a section setting forth assumptions and biographical data, the report set forth assumed discount rates published by the Pension Benefits Guaranty Corporation and stated that Husband was born on December 20, 1957, that his age at the date of valuation was 55.98, that he would receive a monthly payment of $950.79 payable at age 60.03 for sixty "[m]onths [c]ertain" and "life thereafter," and that his life expectancy at the date of valuation was 27.45 years. Petitioner's Exhibit 1.

[5] In addition, the evidence included an appraisal report related to the marital residence, a mortgage statement, a spreadsheet of Husband's debts and expenses with supporting documentation, and Husband's estimated cost to

repair two windows in the marital residence. The evidence also included an account balance statement of Husband's defined contribution annuity savings account through PERF, a portfolio statement from TIAA-CREF, a statement of an investment account, and evidence of the estimated value of the parties' vehicles.

[6] Husband testified that he had worked for IUPUI for twenty-six years, he made approximately twenty dollars per hour, he would have retirement benefits through PERF, he did not currently have access to those funds and would have access to them when he retired, he was fifty-six years old, and that he did not know when he would retire. He testified that he had been married for eighteen years and had been contributing to PERF for twenty-six years. In the file-stamped copy of his verified financial declaration filed with the trial court, Husband indicated that his gross weekly salary was $841.60. When asked if he "wanted to give [Wife] ½ of the time that [he] was married," Husband stated "[t]hat is correct." Transcript at 13-14. He testified that he did not have the ability to pay any lump sum, he did not have any other assets besides PERF where there is a sum of money, that the amount he owed on the house was higher than the house's value, and that Wife's son had caused damage to two windows.

[7] Wife testified that she had fallen at work and receives approximately $900 monthly in social security disability benefits. She stated that Husband had taken all of her keys, that when she returned to the house on one occasion to obtain her things Husband was home and would not open the door, that her

son broke a window to access the house so that she could retrieve her property, and that she and her son did not cause any other damage. Wife requested that the court award her $50,000 and that it order Husband to pay her in installments over an eight-year period. She testified that she is unable to work and support herself and that, if it were not for her son, she would not have a place to live.

[8] On November 5, 2014, the court entered a decree of dissolution of marriage. In the decree, the court awarded Husband the marital residence and ordered that he be responsible for all obligations on the residence including the mortgage. The court found the amount of the mortgage on the residence to be $82,500 based on the admitted mortgage statement, and the value of the residence to be $79,000 based on the admitted appraisal report, for a net negative value of $3,500. The court awarded Husband a vehicle valued at $1,902, debt obligations totaling $24,492, his "PERF Saving account – $49,752.00," and his "PERF Pension – $116,233.64." Appellant's Appendix at 6. The court awarded Wife the TIAA-CREF account of $10,180.30, an IRA of $500, and a vehicle valued at $1,983.

[9] The court further found "that a presumption of an equal division of the marital estate has not been rebutted in this cause." *Id.* at 7. The court ordered that Husband "shall pay [Wife] the sum of $62,154.17 to equalize the division of the marital estate after deducting the cost to replace the window broken by [Wife] and/or her son." *Id.* This sum was reduced to judgment in favor of Wife and against Husband. The court also found that "no interest shall accrue on said

judgment unless [Husband] defaults on payments since the bulk of the marital estate is the PERF pension benefits which he is not eligible to receive until retirement and which are not exempt by state law from division by Court order." *Id.* The court further ordered Husband to pay $500 per month to Wife on the amount due her and to pay $500 in attorney fees to Wife's counsel.

[10] Husband filed a motion to correct error arguing that he will not receive any benefit from the PERF pension until he is retirement age, that a large portion of the amount awarded to Wife is derived from the PERF pension, and that essentially he is prepaying Wife her share of the pension even before he is eligible to receive pension benefits himself. The court denied Husband's motion to correct error.

## *Discussion*

[11] Husband challenges the trial court's order that he begin making monthly equalization payments prior to his retirement and the distribution of his pension benefits, and Wife cross appeals the court's failure to divide the premarital portion of Husband's pension.

[12] The division of marital property is within the sound discretion of the trial court, and we will reverse only for an abuse of discretion. *Love v. Love*, 10 N.E.3d 1005, 1012 (Ind. Ct. App. 2014). An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the trial court has misinterpreted the law or disregards evidence of factors listed in the controlling statute. *Id.* When we

review a claim that the trial court improperly divided marital property, we must consider only the evidence most favorable to the trial court's disposition of the property. *Id.* Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court. *Id.*

[13] The trial court's division of marital property is highly fact sensitive. *Id.* A trial court's discretion in dividing marital property is to be reviewed by considering the division as a whole, not item by item. *Id.* We will not weigh evidence, but will consider the evidence in a light most favorable to the judgment. *Id.* A trial court may deviate from an equal division so long as it sets forth a rational basis for its decision. *Id.* A party who challenges the trial court's division of marital property must overcome a strong presumption that the court considered and complied with the applicable statute. *Id.* at 1012-1013. Thus, we will reverse a property distribution only if there is no rational basis for the award. *Id.* at 1013.

A. *Order of Immediate Monthly Payments*

[14] We initially observe that, at the dissolution hearing, Husband indicated that he wished for Wife to have one-half of the value of his PERF pension earned during the parties' marriage, and he does not argue that the court abused its discretion in awarding Wife fifty percent of the value of his pension earned during the marriage. Rather, Husband "disputes how he is to pay the sums to [Wife]." Appellant's Brief at 7. He contends that the court abused its discretion in ordering him to make immediate monthly payments to Wife of

money he would not be receiving until he retires. He states that, "[d]espite the fact that the distribution to [W]ife is termed an 'equalization payment,' it still amounts to the payment of PERF monies as that is the only remaining asset for [him]," and that "[i]t is the distribution of [his] PERF monies which he does not currently receive." *Id.* at 10. He also argues that the monthly $500 payment to Wife, together with the monthly debt payments the court ordered him to pay, amounts to more than fifty percent of his gross income. Wife's position is that the court acted within its discretion in ordering Husband to pay her monthly installments before distribution of his pension benefit. She further posits that the court took into account that the bulk of the marital estate consisted of the PERF pension by not awarding her any interest on her judgment.

[15] Ind. Code §§ 31-15-7 governs the division of property in actions for dissolution of marriage, and Ind. Code § 31-15-7-4(b) provides:

> The court shall divide the property in a just and reasonable manner by:
>
> > (1) division of the property in kind;
> >
> > (2) setting the property or parts of the property over to one (1) of the spouses and requiring either spouse to pay an amount, either in gross or in installments, that is just and proper;
> >
> > (3) ordering the sale of the property under such conditions as the court prescribes and dividing the proceeds of the sale; or
> >
> > (4) ordering the distribution of benefits described in IC 31-9-2-98(b)(2) or IC 31-9-2-98(b)(3) that are payable after the

dissolution of marriage, by setting aside to either of the parties a percentage of those payments either by assignment or in kind at the time of receipt.[1]

In addition, Ind. Code §§ 5-10.3-8 govern PERF benefits, including retirement benefit options, payment of retirement benefits, and retirement benefit computations. Ind. Code § 5-10.3-8-9(a) provides in part that "[a]ll benefits, refunds of contributions, and money in the fund are exempt from levy, sale, garnishment, attachment, or other legal process." Ind. Code § 5-10.3-8-10 provides in part that, except for certain limited exceptions related to insurance premiums and dues, "[a] member or a beneficiary may not assign any payment."

---

[1] Ind. Code § 31-9-2-98(b) provides:

"Property", for purposes of IC 31-15, IC 31-16, and IC 31-17, means all the assets of either party or both parties, including:

(1) a present right to withdraw pension or retirement benefits;

(2) *the right to receive pension or retirement benefits that are not forfeited upon termination of employment or that are vested (as defined in Section 411 of the Internal Revenue Code) but that are payable after the dissolution of marriage*; and

(3) the right to receive disposable retired or retainer pay (as defined in 10 U.S.C. 1408(a)) acquired during the marriage that is or may be payable after the dissolution of marriage.

(Emphasis added).

[17] Under the Employee Retirement Income Security Act ("ERISA"), pension benefits may be assigned or alienated from the plan participant only if the order alienating the benefit is a qualified domestic relations order ("QDRO"). *Parham v. Parham*, 855 N.E.2d 722, 729 (Ind. Ct. App. 2006) (citing 29 U.S.C. § 1056(d)(3)), *trans. denied*; *see Von Haden v. Supervised Estate of Von Haden*, 699 N.E.2d 301, 304 (Ind. Ct. App. 1998) (observing that ERISA provides that alienation or assignment of benefits is generally prohibited under a pension plan, that there is a limited exception to the anti-alienation provisions for a QDRO, and that a QDRO allows a plan participant to assign part of a pension plan in a divorce settlement). However, PERF is a governmental plan and, as such, is not governed by ERISA. *See* 29 U.S.C. § 1003(b)(1) (stating that ERISA provisions "shall not apply to any employee benefit plan if . . . such plan is a governmental plan (as defined in section 1002(32) of this title)"); 29 U.S.C. § 1002(32) (providing "[t]he term 'governmental plan' means a plan established or maintained for its employees by . . . the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing"); *see also In re Marriage of Adams*, 535 N.E.2d 124, 126 n.2 (Ind. 1989) (noting that the husband contended and the wife impliedly conceded that ERISA exempted certain governmental pension plans such as the police pension plan at issue), *reh'g denied*.

[18] While the trial court did not have the option to divide Husband's PERF pension by way of a QDRO or otherwise order Husband to assign his benefit payments to Wife, *see* Ind. Code §§ 5-10.3-8-9(a) and -10, the court did

nevertheless have the obligation to divide the marital estate under Ind. Code § 31-15-7-4 and had the option to order Husband to make an equalization payment or payments to effect the division. *See Everette v. Everette*, 841 N.E.2d 210, 213-214 (Ind. Ct. App. 2006) (concluding, based on the text of Ind. Code § 5-10.3-8-9(a), that the husband's PERF account was exempt from levy, sale, garnishment, attachment, or other legal process, including a QDRO, that this course did not leave the trial court without recourse to evenly divide the marital estate, and that distribution to the wife of an equalizing amount of the proceeds from the sale of property could be an appropriate mechanism to balance the distribution without violating the PERF statutes).

[19] We note that Brett R. Turner, EQUITABLE DISTRIBUTION OF PROPERTY, contains a helpful discussion regarding methods for distributing retirement benefits. 2 Equit. Distrib. of Property, 3d §§ 6:30, 6:36 (2014). Courts utilize a number of methods for distributing pension benefits, including an immediate offset method, a deferred distribution method, or a variation or combination of the methods. *See id.* Under the immediate offset method, the court determines the present value of the retirement benefits and awards the nonowning spouse his or her share of the benefits in an immediate lump sum award of cash or property equal to the value of his or her interest. *Id.* at § 6:30. Under the deferred distribution method, the court makes no immediate division of the retirement benefits but determines the future benefits to which the nonowning spouse is entitled. *Id.* Traditionally, the benefits have been stated as a share of the owning spouse's future benefit, and payment can be made directly to the

nonowning spouse by the plan administrator under certain circumstances or payment can be ordered to come directly from the owning spouse. *Id.*

[20] Several fact situations may favor the use of an immediate offset method, including where the present value of the pension is relatively modest, the parties are highly litigious, the separating parties are relatively young, and the receiving spouse has immediate and substantial financial need. *Id.* at § 6:36. Other fact situations may favor a deferred distribution method, including where there is not sufficient other tangible property remaining in the marital estate so that a present award is possible, there is an unusually substantial risk that benefits will never be received, the present value of benefits is difficult to compute with reasonable accuracy, and both spouses have no other steady source of income for their retirement years. *Id.*

[21] It is also possible to apply both the deferred distribution and immediate offset methods in a single case. *Id.* One such way to combine the methods is to order an offsetting cash award payable in installments. *Id.* Such an award can give the benefits of immediate offset in a case where there are not sufficient funds available for an immediate cash payment. *Id.* Like the immediate offset method, deferred offset awards are limited by the liquid funds available in the marital estate. *Id.* However, the limitation is not as severe as with an immediate offset award, because a deferred award is spread out over time, but the payor must still have sufficient liquid funds to make the installment payments. *Id.*

[22] In this case, the trial court determined the present value of the portion of Husband's pension to be divided, and the equalization payment was based on the division of the marital assets, which was comprised of Husband's pension and other non-pension property. To the extent the court's order that Husband pay Wife $62,154.17 to equalize the division of the marital estate constituted an immediate offset or partial immediate offset of Husband's pension, we note that the court also ordered that Husband pay the award to Wife in installments of $500 per month. The court further found that "the bulk of the marital estate is the PERF pension benefits which [Husband] is not eligible to receive until retirement." Appellant's Appendix at 7. Indeed, the court valued the marital property, excluding the PERF pension, at approximately $36,325, and the present value of Husband's pension is significant relative to the value of all of the marital assets.

[23] The evidence establishes that Husband's pension represents a significant portion of the marital property and that Husband was fifty-six years old at the time of the hearing. The evidence does not indicate that Husband or Wife have other steady sources of income for their retirement years. These factors may tend to favor a deferred distribution. The absence of sufficient other tangible property remaining in the marital estate so that a total present award was possible, required, at a minimum, that any setoff be payable in installments. Wife testified she receives approximately $900 per month in social security disability benefits and that, if it were not for her son, she would not have a place to live. Husband does not know when he may retire, there is not an unusually

substantial risk that Husband's benefits will never be received, and the present value of benefits is not difficult to compute with reasonable accuracy. These factors favor an immediate offset or an offsetting cash award payable in installments which begin immediately. The trial court ordered monthly payments which took into account the evidence and the parties' needs and resources. The trial court's order does not force Husband to retire, and he will receive any increase in the value of his pension due to his continuing to work.

[24] Based upon the record, applying the deferential standard of review for division of marital property and in light of the considerations discussed above, we cannot say that the trial court abused its discretion in ordering that Husband make monthly payments to Wife beginning immediately rather than after he retires and starts receiving his pension benefit. *See Hughes v. Hughes*, 601 N.E.2d 381, 384 (Ind. Ct. App. 1992) (affirming the trial court's decision to award the husband's pension benefit to him and, as in the case of a residence or other illiquid asset, to award the wife installment payments to satisfy her interest in the asset and noting that the court's order did not force the husband to retire), *trans. denied*; *Qazi v. Qazi*, 546 N.E.2d 866, 872 (Ind. Ct. App. 1989) (holding the trial court did not abuse its discretion in ordering the petitioner to pay the respondent a portion of the present value of his pension plans, which were significant, in installments over a ten-year period where there were other marital assets), *trans. denied*.

B. *Valuation and Division of Husband's Pension*

We next turn to the argument of Wife that the court failed to divide the marital estate equally after finding that the presumption that an equal division is fair had not been rebutted. She requests that this court remand with instructions to include the entire PERF pension in the marital estate and to divide the marital estate equally.

Ind. Code § 31-15-7-4(a) provides:

> In an action for dissolution of marriage under IC 31-15-2-2, the court shall divide the property of the parties, whether:
>> (1) *owned by either spouse before the marriage*;
>> (2) acquired by either spouse in his or her own right:
>>> (A) after the marriage; and
>>> (B) before final separation of the parties; or
>> (3) acquired by their joint efforts.

(Emphasis added). "This 'one pot' theory specifically prohibits the exclusion of any asset from the scope of the trial court's power to divide and award." *In re Marriage of Nickels*, 834 N.E.2d 1091, 1098 (Ind. Ct. App. 2005). "While the trial court may ultimately determine that a particular asset should be awarded solely to one spouse, it must first include the asset in its consideration as to how the marital estate should be divided." *Hartley v. Hartley*, 862 N.E.2d 274, 282 (Ind. Ct. App. 2007).

In addition, Ind. Code § 31-15-7-5 provides:

> The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, *this presumption may be rebutted* by a party who presents relevant evidence, including

evidence concerning the following factors, *that an equal division would not be just and reasonable*:

> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
>
> (2) *The extent to which the property was acquired by each spouse*:
>
> > (A) *before the marriage*; or
> >
> > (B) through inheritance or gift.
>
> (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.
>
> (4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.
>
> (5) The earnings or earning ability of the parties as related to:
>
> > (A) a final division of property; and
> >
> > (B) a final determination of the property rights of the parties.

(Emphases added).

[28]     The evidence before the trial court related to the present value of Husband's pension consisted of the valuation report prepared by Financial Evaluations. The report provided that the present value of the defined benefit pension annuity starting at age 60.03 and continuing through the retiree's projected death was $172,285.30 and that the amount earned during the marriage, based on a coverture fraction of 67.4658 percent, was $116,233.64. The trial court found that "[t]he marital estate shall be valued and divided as follow[s]: . . . PERF Pension – $116,233.64." Appellant's Appendix at 6. The court also

found "that a presumption of an equal division of the marital estate has not been rebutted in this cause." *Id.* at 7.

[29] The trial court included only the coverture fraction of Husband's pension in the marital estate for property division and failed to include the portion of his pension earned before the marriage. While the court may ultimately determine that the portion of Husband's pension earned prior to the marriage should be awarded solely to him, it must first include the asset in its consideration as to how the marital estate should be divided. Accordingly, the court erred in failing to include all property, including that portion of Husband's pension earned before the marriage, in the marital estate. We reverse that portion of the decree valuing Husband's pension and the marital estate and remand with instructions for the court to include the entire value of Husband's pension in the marital estate, to enter findings that either an equal division of the pension is just and reasonable under the circumstances or, alternatively, that the presumption of equal division has been rebutted by evidence which could include that a portion of the pension was earned by Husband prior to the parties' marriage, and thus that an equal division would not be just and reasonable. The court is to recalculate the division of marital assets accordingly and, if necessary, recalculate Husband's equalization payment, without the necessity of another hearing.

## *Conclusion*

[30] For the foregoing reasons, we affirm in part, reverse in part, and remand with instructions.

Affirmed in part, reversed in part, and remanded.

Riley, J., concurs.

Friedlander, Sr. J., concurs in part and dissents in part with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

Timothy Kendrick,

*Appellant-Defendant*,

v.

Angela Kendrick,

*Appellee-Plaintiff*.

Court of Appeals Case No.
49A02-1412-DR-888

**Friedlander, Sr. J., concurring in part and dissenting in part.**

[32] I would affirm the trial court in every respect, including most notably its division of Husband's pension, and therefore respectfully dissent in part from the portion of the Majority's option that remands for further proceedings with respect to that issue.

[33] As the Majority notes, trial courts may utilize the "coverture fraction formula" method to distribute pension or retirement plan benefits to earning and non-earning spouses. This method has been described thus: "Under this methodology, the value of the retirement plan is multiplied by a fraction, the

numerator of which is the period of time during which the marriage existed (while pension rights were accruing) and the denominator is the total period of time during which pension rights accrued." *In re Marriage of Fisher*, 24 N.E.3d 429, 433 (Ind. Ct. App. 2014). Even without the magic words indicating that the trial court technically considered *all* of Husband's pension as a marital asset before setting aside to him the coverture portion earned outside the marriage, it is very clear that this is precisely the method employed in dividing Husband's pension between him and Wife. Although I understand the point the Majority is making in remanding on the stated rationale, it needlessly prolongs this litigation and ultimately serves no purpose. The trial court obviously employed a well-established and well-accepted method in distributing Husband's pension, and I would let that be the end of the matter.