## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 31 2016, 10:14 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Rodney V. Shrock
Kokomo, Indiana

ATTORNEY FOR APPELLEE

Jacob D. Winkler
Noel Law
Kokomo, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mary J. Coate, <br> *Appellant-Petitioner,* <br><br> v. <br><br> Timothy D. Coate, <br> *Appellee-Respondent.* | May 31, 2016 <br><br> Court of Appeals Case No. <br> 34A02-1509-DR-1433 <br><br> Appeal from the Howard Circuit Court <br><br> The Honorable J. David Grund, Special Judge <br><br> Trial Court Cause No. <br> 34C01-1304-DR-286 |

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Petitioner, Mary J. Coate (Mary), appeals the trial court's division of the marital estate following the dissolution of her marriage to Appellee-Respondent, Timothy D. Coate (Timothy).

We affirm in part, reverse in part, and remand.

## ISSUES

Mary raises four issues on appeal, three of which we find dispositive and restate as follows:

(1) Whether the trial court abused its discretion by awarding the marital residence to Timothy;

(2) Whether the trial court abused its discretion in its valuation of Timothy's pension; and

(3) Whether the trial court abused its discretion by awarding 10% of Timothy's pension to Mary and by failing to order that Mary is entitled to a surviving spouse benefit.

## FACTS AND PROCEDURAL HISTORY

On June 6, 1982, Timothy and Mary were married. The marriage produced two children, who are both now grown. Prior to the marriage, Timothy served for four years in the United States Army. In 1981, he was hired by the United States Postal Service as a mail carrier and has been employed there ever since. During the first half of the marriage, Mary worked several part-time jobs but otherwise stayed home to care for the children. In 1994, she obtained

employment with the Postal Service in its processing department, where she continues to work. On April 4, 2013, after nearly thirty-one years of marriage, Mary filed a petition for dissolution.

[5] On November 20, 2014, the trial court conducted the final hearing. The evidence established that, during the course of their marriage, Timothy and Mary accrued very little debt. As part of their plan for a comfortable retirement, they paid off the mortgage on their marital home in Kokomo, Indiana, which was appraised at $280,000. The parties also contributed funds to their individual Thrift Savings Plan (TSP) accounts. As of the date the petition for dissolution was filed, Timothy's TSP account contained $102,541, and Mary's TSP account totaled $136,498. Through their employment with the Postal Service, both Timothy and Mary have pensions. Timothy has a Civil Service Retirement System (CSRS) pension, whereas Mary has a Federal Employees Retirement System (FERS) pension. Under the CSRS, Timothy does not contribute to the social security system, and he will not be eligible to receive social security benefits upon his retirement. Conversely, under the FERS, social security taxes are withheld from Mary's paychecks, and she will be entitled to receive social security benefits, in addition to her pension, upon her retirement.

[6] On February 5, 2015, the trial court entered its Findings of Fact, Conclusions of Law and Decree of Dissolution. The trial court concluded that the parties should receive equal shares of the marital estate. The trial court awarded the marital residence to Timothy, and both parties received their requested items of

personal property and life insurance policies. Each party received his/her own TSP account. In addition, the court determined that Mary's FERS pension has a monthly benefit of $550, and Timothy will receive $2,809 per month from his CSRS pension. The court considered that Mary "delayed employment for approximately twenty[-]one years to be a homemaker and raise the children" which "resulted in [Timothy's] pension benefit being of a much greater value." (Appellant's App. p. 12). Therefore, "in order to equalize the property division[,]" the trial court used the coverture fraction formula to divide Timothy's pension, earned through the date the petition for dissolution was filed, and awarded 23.5% of his CSRS pension to Mary. (Appellant's App. p. 12). Also, in order to effectuate an equal division of the estate, the trial court ordered Timothy to "pay an equalizing judgment of $133,938.07 to [Mary]. [Timothy] shall pay this amount by [Qualified Domestic Relations Order (QDRO)] from his [TSP] account with any balance paid within [thirty] days thereafter." (Appellant's App. p. 16).[1]

[7] On February 18, 2015, Mary filed a "Motion to Correct Errors [sic]," alleging, in relevant part, that the trial court erred by: awarding the marital real estate to Timothy; ordering Timothy to pay an equalizing judgment to Mary via a

---

[1] Under the Employee Retirement Income Security Act (ERISA), "pension benefits may be assigned or alienated from the plan participant only if the order alienating the benefit is a [QDRO]." *Kendrick v. Kendrick*, 44 N.E.3d 721, 725 (Ind. Ct. App. 2015), *trans. denied*. However, a "governmental plan" is not governed by ERISA. *Id.*; *see* 29 U.S.C. §§ 1002(32), 1003(b)(1). As neither party has indicated that the QDRO was an improper means of transferring funds from Timothy's TSP account, we will presume that the QDRO satisfied the requirements of the TSP administrator.

QDRO from his TSP account; and failing to require Timothy to opt for the survivor benefit on his CSRS pension for Mary. (Appellant's App. p. 29). On March 4, 2015, Timothy also filed a "Motion to Correct Errors [sic]." (Appellant's App. p. 35). Timothy claimed, in part, that the trial court erred by awarding 23.5% of his pension to Mary. Specifically, Timothy argued that, unlike Mary, he would not be entitled to receive any social security benefits upon his retirement, and it would therefore be more equitable to reduce Mary's share of his pension to 10%. On July 21, 2015, Mary filed a "Motion for Relief from Judgment," claiming that the trial court's Decree of Dissolution "contains a mathematical (clerical) mistake"—*i.e.*, "in an attempt to equalize the pension payments accruing during the marriage . . . the [c]ourt's obvious intent was to transfer $862.65 to [Mary] but only provided for a transfer of $660.00." (Appellant's App. p. 37).

[8] On July 22, 2015, the trial court held a hearing on the parties' motions to correct error and for relief from judgment. On August 14, 2015, the trial court issued its "Order on Motion to Correct Errors [sic] and Motion for Relief from Judgment." (Appellant's App. p. 21). The trial court denied both Mary's "Motion to Correct Errors [sic]" and her "Motion for Relief from Judgment." (Appellant's App. pp. 29, 37).[2] As to Timothy's "Motion to Correct Errors

---

[2] Mary raises the trial court's denial of her "Motion for Relief from Judgment" (regarding a purported mathematical error) as her fourth issue in her appellate brief. (Appellant's App. p. 37). However, except to broadly identify the claim, Mary does not further develop this argument. Therefore, we find that she has waived the matter for review pursuant to Indiana Appellate Rule 46(A)(8)(a).

[sic]," the trial court stated that it "erroneously found that [Mary] delayed employment approximately twenty-one years to be a homemaker and raise the children" as she "had [s]ocial [s]ecurity earnings and was employed all but five (5) years of the marriage." (Appellant's App. pp. 25, 35). Thus, the trial court found that it "fail[ed] to consider the overall retirement benefits to be received by both parties." (Appellant's App. p. 24). Finding that Mary will receive a monthly pension of $550 plus a monthly social security payment of $2,005, the trial court reduced Mary's share of Timothy's pension from 23.5% to 10% as of the filing date. The trial court noted that "[i]f this division results in an unequal division of vested assets[,] it is the [c]ourt's intention to do so after consideration of all retirement and [s]ocial [s]ecurity benefits of the parties." (Appellant's App. p. 25).

Mary now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

In this case, the trial court entered sua sponte findings of fact and conclusions thereon in accordance with Indiana Trial Rule 52(A). "Sua sponte findings control only as to the issues they cover, and a general judgment will control as to the issues upon which there are no findings." *Morgal-Henrich v. Henrich*, 970 N.E.2d 207, 210 (Ind. Ct. App. 2012). We will affirm a general judgment "if it can be sustained on any legal theory supported by the evidence." *Id.* Regarding the special findings and conclusions thereon, we "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given

to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). Our review is two-tiered: first, we must determine whether the evidence supports the trial court's findings; second, we consider whether those findings support the judgment. *O'Connell v. O'Connell*, 889 N.E.2d 1, 10 (Ind. Ct. App. 2008). The trial court's findings will be found clearly erroneous if "the record contains no facts to support them either directly or by inference." *Morgal-Henrich*, 970 N.E.2d at 210 (quoting *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997)). "A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts." *Id.* "In order to determine that a finding or conclusion is clearly erroneous, [this court's] review of the evidence must leave [us] with the firm conviction that a mistake has been made." *Id.*

[11] In addition, it is well established that a challenge to the trial court's division of marital property is reviewed under the abuse of discretion standard. *Granzow v. Granzow*, 855 N.E.2d 680, 682-83 (Ind. Ct. App. 2006). Here, Mary is technically appealing from the denial of her "Motion to Correct Errors [sic]," which is also reviewed for an abuse of discretion. *Wortkoetter v. Wortkoetter*, 971 N.E.2d 685, 687 (Ind. Ct. App. 2012); (Appellant's App. p. 29). Our court will consider only the evidence most favorable to the trial court's judgment, and we will uphold the trial court's decision unless "its judgment is clearly against the logic and effect of the facts and the reasonable inferences to be drawn from those facts." *Granzow*, 855 N.E.2d at 683. We do not reweigh evidence or assess the credibility of witnesses. *O'Connell*, 889 N.E.2d at 10.

## II. *Marital Residence*

[12] Mary first claims that the trial court abused its discretion by awarding the marital residence to Timothy and ordering that Timothy pay her an equalizing judgment via a QDRO. In Indiana, following a petition for dissolution, the trial court is required to

> divide the property in a just and reasonable manner by:
> (1) division of the property in kind;
> (2) setting the property or parts of the property over to one (1) of the spouses and requiring either spouse to pay an amount, either in gross or in installments, that is just and proper;
> (3) ordering the sale of the property under such conditions as the court prescribes and dividing the proceeds of the sale; or
> (4) ordering the distribution of benefits described in [Indiana Code section] 31-9-2-98(b)(2) or [Indiana Code section] 31-9-2-98(b)(3) that are payable after the dissolution of marriage, by setting aside to either of the parties a percentage of those payments either by assignment or in kind at the time of receipt.

Ind. Code § 31-15-7-4. There is a rebuttable presumption "that an equal division of the marital property between the parties is just and reasonable." I.C. § 31-15-7-5. In this case, the trial court determined that the parties should receive equal shares of the marital estate. In accomplishing this goal, the trial court was obligated to divide all of the property of the parties, regardless of whether it was:

> (1) owned by either spouse before the marriage;
> (2) acquired by either spouse in his or her own right:
>     (A) after the marriage; and
>     (B) before final separation of the parties; or
> (3) acquired by their joint efforts.

I.C. § 31-15-7-4(a). "A party challenging the trial court's division of marital property must overcome a strong presumption that the trial court considered and complied with the applicable statute, and that presumption is one of the strongest presumptions applicable to our consideration on appeal." *O'Connell*, 889 N.E.2d at 10 (internal quotation marks omitted).

[13] During the final hearing, both parties testified that they wanted possession of the family home. In support of its decision to award the marital residence to Timothy, the trial court found that

> [i]n 2011, [Timothy] inherited approximately $100,000.00 and paid off the marital residence mortgage among other debts of the parties. In 1999, [Mary] inherited approximately $6,000.00 and spent [the] same toward marital assets and debts. The [c]ourt considered these facts to be especially important in determining the disposition of the marital residence.

(Appellant's App. p. 16). In addition, the trial court found that "[Mary] testified that due to downsizing at the postal service that she anticipates that her position will soon be transferred elsewhere and she will be required to travel up to [fifty] or so miles away in order to keep her employment with the post office." (Appellant's App. p. 13).

[14] According to Mary, there was "no evidence that [Timothy] considered his inheritance as a factor in the division of the home, and the [c]ourt failed to make any findings or explain why the inheritance would be especially important." (Appellant's Br. p. 9). Also, Mary argues that the evidence established that she planned to commute in the event her job was relocated.

We find that Mary's arguments amount to a request that we reweigh the evidence, which we decline to do. It is well established that "[a] trial court's discretion in dividing marital property is to be reviewed by considering the division as a whole, not item by item." *Kendrick*, 44 N.E.3d at 724. "In crafting a just and reasonable property distribution, a trial court is required to balance a number of different considerations in arriving at an ultimate disposition. The court may allocate some items of property or debt to one spouse because of its disposition of other items." *Morgal-Henrich*, 970 N.E.2d at 212 (quoting *Fobar v. Vonderahe*, 771 N.E.2d 57, 59 (Ind. 2002)).

[15] Here, the trial court determined that an equal property division was just and reasonable. The evidence most favorable to the trial court's decision establishes that Timothy wished to be awarded the house, he contributed his inheritance to the mortgage, and Mary would likely no longer be employed in Kokomo. Therefore, we find that it was entirely within the discretion of the trial court to set the real estate over to Timothy and then require Timothy to make an equalizing payment to Mary of $133,938.07.[3] *See* I.C. § 31-15-7-4(2) (providing that the trial court may "set[] the property or parts of the property over to one (1) of the spouses and requir[e] either spouse to pay an amount, either in gross or in installments, that is just and proper").

[16] Mary further asserts that the trial court abused its discretion because it

---

[3] Mary does not dispute that $133,938.07 is the appropriate amount for an equalizing judgment.

> left her without a residence. She will need a residence after the
> divorce. There is no finding by the [t]rial [c]ourt that the tax
> consequences of the equalizing judgment were taken into
> account. The [t]rial [c]ourt's award of the marital residence
> offset by an award of a QDRO implicitly impacted by a tax and
> tax penalty where a party is divested of ownership in a home is
> not equitable, results in an unequal division of marital property
> and is an abuse of discretion.

(Appellant's Br. p. 10). As such, Mary argues that "[t]he record does not support an award of the marital residence to either party." (Appellant's Br. p. 10). Rather, she posits that "[a]n [o]rder for the sale of the marital real estate where there are no minor children and the parties are near retirement provides an equitable solution. The house is either sold at fair market value or purchased by one of the parties." (Appellant's Br. p. 10).

[17] "The court, in determining what is just and reasonable in dividing property under this chapter, shall consider the tax consequences of the property disposition with respect to the present and future economic circumstances of each party." I.C. § 31-15-7-7. Trial courts are statutorily required "to consider only the direct or inherent and necessarily incurred tax consequences 'of the property disposition.'" *Hartley v. Hartley*, 862 N.E.2d 274, 284 (Ind. Ct. App. 2007) (quoting *Harlan v. Harlan*, 560 N.E.2d 1246, 1246 (Ind. 1990)). "[T]o the extent the trial court was required but failed to consider tax consequences in dividing the marital estate and the resulting division does not come close to the attempted apportionment[,] . . . the findings will not support the judgment and

we must remand." *Hardin v. Hardin*, 964 N.E.2d 247, 254 (Ind. Ct. App. 2012) (second and third alterations in original) (internal quotation marks omitted).

[18] In this case, no actual evidence of the tax consequences was presented to the trial court. Rather, the parties' attorneys *vaguely* discussed the tax implications during the hearing on the parties' motions to correct error. First, Mary's attorney argued that the rules for the TSP accounts state

> that you cannot start withdrawing it until a certain age without a tax penalty, and then at a certain point in time you must start withdrawing enough amounts so that you do not generate a tax penalty. But if you need the money or need the use of the money immediately, um since it's a pre-income tax deposit, the person that's going to cash in that [TSP] is going to suffer a penalty. I think the penalty is usually [20%], and then there's also the regular income tax that's going to be assessed against it. So . . . the theory is that[] you're going to have between [40% and 50%] of that TSP money taken away uh in taxes by the Internal Revenue Service.

(Tr. p. 97) (ellipsis in original). In response, Timothy's attorney argued that

> we tried to divide everything up on the balance sheet and there's [sic] tax consequences sometimes on how it's divided up but it's not a [40%] or [50%] tax rate to [Mary]. Um . . . on that uh there would be no penalty if she withdrew the money to buy a house like she states um because it's a divorce. And in the penalty part [sic] of the cash withdraw[al] is not imposed under the IRS rules and the, when she withdraws the money it's at her then income level. So like most 401K[ plans] or [TSPs] are designed, when you retire your income's lower and you['re] taxed at a much lower rate. And so it would not equate to a [40%] or [50%] rate. [Timothy] was also awarded his [TSP account], he'[d] have the

same identical tax consequences if we wanted to withdraw money from his [TSP account].

(Tr. pp. 103-04) (ellipsis in original).

[19] Here, the trial court could not have been required to consider the tax consequences of ordering Timothy to transfer money to Mary from his TSP account via a QDRO because no evidence of the necessarily incurred tax consequences was presented. *Hardin*, 964 N.E.2d at 254; *see, e.g.*, *Hartley*, 862 N.E.2d at 284 (noting that "a certified public accountant calculated the pre-tax and after-tax values of the parties' pensions and 401(k) accounts[,]" and these "calculations were admitted into evidence"). Accordingly, we find that Mary "has invited the error [s]he now alleges, and has waived this issue on appeal." *Hardin*, 964 N.E.2d at 254. Furthermore, as we have already discussed, it was well within the discretion of the trial court to set aside the marital residence to Timothy rather than ordering it be sold and the proceeds divided. *See* I.C. § 31-15-7-4.

### III.  *CSRS Pension*

### A.  *Value of CSRS Pension*

[20] Next, Mary claims that the trial court abused its discretion by assigning a monthly value of $2,809 to Timothy's CSRS pension. Prior to the parties' marriage, Timothy served four years in the U.S. Army, during which time, he began accruing a pension. After becoming employed by the Postal Service, Timothy opted to have his four years of military service tacked onto to his

CSRS pension. According to Mary, "[t]he $2,809.00 number used by the court only took into account the thirty-two years he worked at the post office and not the thirty-six years he is entitled to as a result of the [additional military years]. A thirty-six[-]year service record would amount to a $3,182.00 monthly pension." (Appellant's Br. pp. 10-11). She contends that "there is no rationale [sic] or equitable basis for the trial court to ignore assets acquired during the [parties'] cohabitation and after more [sic] six years of cohabitation followed by almost three decades of marriage." (Appellant's Br. p. 11).

[21] "When a trial court engages in valuing assets in the course of acting on a dissolution action, it has broad discretion, and its valuation will only be disturbed for an abuse of that discretion. So long as there is sufficient evidence and reasonable inferences to support the valuation, an abuse of discretion does not occur." *Granzow*, 855 N.E.2d at 685 (internal citations omitted). Indiana's "one-pot" theory of marital property "specifically prohibits the exclusion of any asset from the scope of the trial court's power to divide and award." *Kendrick*, 44 N.E.3d at 728. As we have already stated, marital property consists of property that is acquired by either spouse prior to the marriage. I.C. § 31-15-7-4(a). Therefore, although "the court may ultimately determine that the portion of [Timothy's] pension earned prior to the marriage should be awarded solely to him, it must first include the asset in its consideration as to how the marital estate should be divided." *Kendrick*, 44 N.E.3d at 729.

[22] In this case, the trial court applied the coverture fraction formula to determine what portion of Timothy's pension is attributable to the marriage. *See In re Marriage of Fisher*, 24 N.E.3d 429, 433 (Ind. Ct. App. 2014).

> The "coverture fraction" formula is one method a trial court may use to distribute pension or retirement plan benefits to the earning and non-earning spouses. Under this methodology, the value of the retirement plan is multiplied by a fraction, the numerator of which is the period of time during which the marriage existed (while pension rights were accruing) and the denominator is the total period of time during which pension rights accrued.

*Id.* (quoting *Hardin*, 964 N.E.2d at 250). The trial court found the "start date of [Timothy's] pension initiation to be June of 1975, the marriage date of June 6, 1982, and the ending date of April 4, 2013 (date of filing)." (Appellant's App. p. 13). Using these dates, the trial court determined that the length of the marriage while pension rights were accruing was 367 months (30.6 years), and the total period that Timothy's pension accrued prior to the filing date was 451 months (37.6 years); thus 81% of Timothy's pension represented the "marital portion." (Appellant's App. p. 13).[4] The trial court found that Mary was entitled to 40.5% (*i.e.*, one-half of the marital portion) of Timothy's CSRS pension. The trial court initially reduced this number to 23.5% to offset

---

[4] We note that the length of the marriage while pension rights accrued (*i.e.*, between June 6, 1982, and April 4, 2013) is actually 369 months, and the total time Timothy earned pension benefits prior to the filing date (*i.e.*, between June of 1975 and April 4, 2013) is 454 months. Regardless, using these numbers also establishes that the marital portion of Timothy's CSRS pension is 81%.

Timothy's share of Mary's pension. Then, following Timothy's "Motion to Correct Errors [sic]," the trial court reduced Mary's share of the CSRS pension to 10% based on the fact that she will also receive social security benefits, whereas Timothy will not. (Appellant's App. p. 35).

[23] Timothy submitted an annuity estimate into evidence, which provides that a CSRS pension employee with thirty-two years of service will receive a monthly payment of $2,809. An employee with thirty-seven years of service will receive $3,275. (*See* Respondent's Ex. H). In using the coverture fraction formula, the trial court relied on the total number of years—*i.e.*, thirty-seven—that Timothy contributed to his pension prior to the marriage and up to the filing date. Accordingly, we find that the trial court should have utilized a value of $3,275 for Timothy's CSRS pension based on his thirty-seven years of service. We remand with instructions for the trial court to recalculate and redistribute, if necessary, the marital estate based on the fact that the value of Timothy's monthly CSRS pension benefit is $3,275.

### B. *Division of CSRS Pension*

[24] Mary also claims that the trial court abused its discretion by reducing her share of Timothy's CSRS pension to 10%. In its "Order on Motion to Correct Errors [sic] and Motion for Relief from Judgment," the trial court "found that [Mary's] social security benefits are not a mar[it]al asset to be included in the marital pot subject to division. But, the parties acknowledged that [c]ourts may consider these benefits in the overall economic circumstances of the parties in adjudging

a just and reasonable division of property between the parties." (Appellant's App. pp. 21, 23). As such, the trial court explained that

> [b]oth [p]arties submitted similar exhibits as to their individual post office pensions and the social security benefits of [Mary]. [Mary's] exhibit attached a document entitled "Your Social Security Statement" which sets forth [Mary's] benefit at full retirement at $2,005.00 per month. The Statement also states that [Mary] has "earned enough credits to qualify for benefits" now if she became disabled and would receive $1,893.00 per month. [Timothy's] exhibit "H" also attached a similar Social Security Statement of [Mary's] benefits. [Mary] will receive $550.00 per month in [FERS] benefits. If one considers the overall retirement benefits to be received by the parties they are substantially similar in amount.

(Appellant's App. pp. 23-24). The trial court further indicated that it

> erred in failing to consider the overall retirement benefits to be received by both parties. After careful consideration of the testimony, exhibits and the factors stated above, [Mary] is awarded a portion of [Timothy's] pension in the amount of ten percent (10%) instead of twenty-three and one-half (23.5%). The [c]ourt finds that [Mary] will be entitled to all of her own post office pension benefits, which were incurred entirely during the marriage, she will be entitled to all of her social security benefits, and in addition, she will be entitled to ten percent (10%) of [Timothy's] post office pension benefits as of the filing date. On the other hand, [Timothy] is not entitled to any social security benefits and will receive ninety percent (90%) of his post office benefits as of the filing date. If this division results in an unequal division of vested assets it is the [c]ourt's intention to do so after consideration of all retirement and [s]ocial [s]ecurity benefits of the parties.

(Appellant's App. pp. 24-25).

[25] On appeal, Mary asserts that

> [t]he [t]rial [c]ourt admitted its distribution of the vested pensions was unequal and it was the intent of the [c]ourt to do so. [She] argues that such a distribution is patently unfair. Any [s]ocial [s]ecurity benefit she earned during her homemaker years was funded by a tax while [Timothy's] pension was a depletion of marital assets. Further, the parties agreed upon an equal division of the marital assets in their sworn testimony.

(Appellant's Br. p. 14). On the other hand, Timothy contends that "[t]o disallow the trial court from considering Mary's social security benefits would penalize [Timothy] because the totality of his CSRS pension is divisible as a marital asset, whereas Mary's social security benefits are not. Further, the parties were able to enjoy the fact that social security taxes were not withheld from his payroll during the course of their marriage." (Appellee's Br. p. 14).

[26] Indiana Code section 31-15-7-5(3) provides that a trial court may deviate from the presumption of an equal division of marital property if "[t]he economic circumstances of each spouse at the time the disposition of the property is to become effective" indicate that "an equal division would not be just and reasonable." In the present case, the trial court endeavored to divide all of the marital property in an equitable manner. While the trial court's division of the parties' pensions may have ultimately provided Timothy with a larger share of the marital assets, we find that it was within the discretion of the trial court to consider the parties' overall financial circumstances—*i.e.*, Mary's social security

benefits, with an established value as of the final hearing of $2,005 per month—to craft an award that would leave the parties in relatively equal financial positions upon retirement.[5] *See In re Marriage of Bartley*, 712 N.E.2d 537, 545 (Ind. Ct. App. 1999) ("Other types of property in which the spouse has no present possessory interest *may* be considered as relevant to the parties' earning abilities or economic circumstances" so long as those interests are not "too remote or speculative to be relevant in allocating marital property.").

[27]     Finally, Mary contends that the trial court abused its discretion by failing to award her with a surviving spouse benefit from Timothy's CSRS pension. During the final hearing, Timothy testified that he could sign up for a surviving spouse benefit, which would be deducted from his CSRS pension. In the event that Timothy predeceases Mary, "[s]he would receive as much as [53%] of [his] retirement." (Tr. p. 50). In its "Order on Motion to Correct Errors [sic] and Motion for Relief from Judgment," the trial court stated that

> [i]f [Timothy] were required to opt the survivor option[,] [Mary] should also opt the survivor option on her pension. However, this is not possible since [Mary] was awarded all of her own pension benefits and [Timothy] was not awarded any part of [Mary's] benefits. Additionally, if [Timothy] were required to opt the survivor option it would lower his benefit amount and the value of his monthly pension would be less. No evidence was presented by [Mary] on the value differences between opting or

---

[5] Based on the trial court's award (and assuming that Timothy's monthly pension benefit is $3,275), Mary will receive approximately $2,882 per month from her pension, her social security benefits, and her 10% share of Timothy's CSRS pension. In turn, Timothy will receive approximately $2,947 from his pension.

not opting the survivor benefit on the parties['] pension plans. [Mary's] request is denied.

(Appellant's App. pp. 21-22). Although there was no discussion of the costs of the surviving spouse benefit or who should be responsible therefor during the final hearing, Timothy submitted an exhibit outlining his annuity payments under the CSRS pension. This exhibit indicates that an employee of thirty-seven years would be entitled to a monthly payment of $3,275, which, it appears, would be reduced by $305 per month for a surviving spouse benefit.

[28] Mary argues that she should receive the surviving spouse benefit because she "testified that she was willing to pay for the benefit." (Appellant's Br. p. 14). We disagree and find no such testimony in the record. Rather, during closing arguments at the final hearing, Mary's attorney merely requested that "there be a survivor benefit in [Timothy's] pension." (Tr. p. 89). Then, during the hearing on the motions to correct error, Mary's attorney argued that it would

> be unfair not to award the . . . surviving spouse option [to Mary]. It is available, you have to award it, I don't think it costs [Timothy] anything. And if there is an expense you can, you can charge the expense I suppose to my client. But without the surviving spouse option uh she is not getting the benefit of her thirty plus year marriage to [Timothy] that's available under the postal service um pension rules.

(Tr. pp. 100-01). Mary also insists that Timothy "will be entitled to a survivor benefit from Mary's [s]ocial [s]ecurity if she predeceases him. He pays nothing for the benefit. By refusing to grant Mary's request to receive the CSRS

surviving spouse benefit at her cost, the [c]ourt has given [Timothy] a benefit for free that Mary is entitled to fund from her own money." (Appellant's Br. p. 14). No evidence was presented to establish that Timothy would be entitled to a social security survivor benefit or in what amount. Moreover, Mary has failed to cite to any authority or otherwise present a cogent argument to support her assertion that she "is entitled to" a surviving spouse benefit. (Appellant's Br. p. 14). *See* Ind. Appellate Rule 46(A)(8)(a). Accordingly, we cannot say that the trial court abused its discretion by denying her request to order Timothy to opt for the surviving spouse benefit on his CSRS pension.

## CONCLUSION

[29] Based on the foregoing, we conclude that the trial court acted within its discretion by awarding the marital residence to Timothy and by ordering him to pay an equalizing judgment to Mary; the trial court erred by assigning a monthly value of $2,809 instead of $3,275 to Timothy's CSRS pension; and the trial court acted within its discretion by considering the overall financial circumstances of the parties in determining that Mary should receive 10% of Timothy's CSRS pension and by denying Mary's request to order Timothy to opt for the surviving spouse benefit on his CSRS pension.

[30] Affirmed in part, reversed in part, and remanded.

[31] Najam, J. and May, J. concur