Barry WANNER, Appellant–Petitioner,

v.

Jill HUTCHCROFT, Appellee–Respondent.

No. 79A02–0711–CV–998.

Court of Appeals of Indiana.

June 10, 2008.

Carol Sparks Drake, Whitestown, IN, Attorney for Appellant.

Marcel Katz, Law Offices of Marcel Katz, Lafayette, IN, Attorney for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

The marriage of Appellant–Petitioner Barry Wanner ("Barry") and Appellee–Respondent Jill Hutchcroft ("Jill") was dissolved on October 11, 2007. Barry now appeals the division of marital property. We affirm.

### Issues

Barry presents two issues for review:

I. Whether the trial court abused its discretion by refusing to deviate from the statutory presumptive 50/50 split and award Barry a larger share of the marital estate; and

II. Whether the trial court abused its discretion by ordering that Barry reimburse Jill for potential income tax consequences.

### Facts and Procedural History

The parties were married on September 29, 1990.[1] On September 19, 2006, Barry

---

1. The trial court found that the parties began living together in 1984. Jill asserts that this finding is factually true; Barry does not assert its falsity, but rather that it lacks evidentiary support in the record. The record does

petitioned to dissolve the marriage. A final hearing was conducted on August 30, 2007, at which exhibits were presented and argument of counsel was heard.[2] At that time, Barry was employed as a college professor earning over $100,000 annually and Jill was unemployed due to clinical depression. She had previously been employed as an assistant professor.

The parties were in substantial agreement as to the appropriate date of valuation and the current value of the marital assets. However, they disagreed as to the proportional distribution. Jill requested that the trial court divide the marital estate equally, while Barry requested that he receive a larger share.[3] His request was premised upon his acquisition of certain assets before the marriage and the fact that he is thirteen years older than Jill and likely to retire earlier.

On October 11, 2007, the trial court dissolved the parties' marriage and determined that the marital estate (valued as of May 31, 2006) should be divided equally. Barry was to retain the marital residence, investment accounts and pension funds and was ordered to pay Jill $532,100 as an equalization payment. However, the trial court found that Barry had dissipated assets existing at the time of separation such that the liquid funds were largely depleted. Accordingly, the trial court ordered that Jill could elect (within six months from the decree) to withdraw $137,500 in pension funds and Barry would be responsible for the tax consequences of the liquidation. Alternatively, Barry could pay Jill $137,500 in cash, reducing her portion of

the pension funds to $394,600. Barry now appeals.

## Discussion and Decision

### I. Property Division

■ Barry challenges the equal distribution of marital property. More specifically, he claims that the trial court abused its discretion by ignoring evidence that he acquired the marital residence and a portion of his pension funds prior to the marriage. He strenuously objects to the trial court's finding that, "the assets of the marriage have been acquired almost all during the marriage and through the joint efforts of the parties." (Appellee's App. 7.)

Indiana Code Section 31–15–7–5 governs the distribution of marital property and provides as follows:

The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse:

(A) before the marriage; or

(B) through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective,

---

not reveal a specific date upon which the cohabitation of the parties began.

**2.** Pursuant to an agreement of the parties, no oral testimony was presented. Barry's deposition, certain financial documents, and the parties' proposed distributions were admitted into evidence.

**3.** Barry's exhibits alternatively suggested a 75/25 split in his favor and a 60/40 split in his favor. He also compiled an exhibit showing a 50/50 division. (Husband's Exhibits A–B).

including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

(A) a final division of property; and

(B) a final determination of the property rights of the parties.

 The foregoing statute creates a rebuttable presumption that an equal division of the marital property of the parties is just and reasonable. *Akers v. Akers,* 729 N.E.2d 1029, 1033 (Ind.Ct.App.2000). The distribution of marital property is committed to the sound discretion of the trial court. *Breeden v. Breeden,* 678 N.E.2d 423, 427 (Ind.Ct.App.1997). A party who challenges the trial court's division of marital property must overcome a strong presumption that the court considered and complied with the applicable statute. *In re Marriage of Bartley,* 712 N.E.2d 537, 542 (Ind.Ct.App.1999).

 Indiana's "one pot" theory prohibits the exclusion of any asset in which a party has a vested interest from the scope of the trial court's power to divide and award. *Hann v. Hann,* 655 N.E.2d 566, 569 (Ind.Ct.App.1995), *trans. denied.* Accordingly, the systematic exclusion of any marital asset from the marital pot is erroneous. *Wallace v. Wallace,* 714 N.E.2d 774, 780 (Ind.Ct.App.1999), *trans. denied.* However, although the trial court must include all assets in the marital pot, it may ultimately decide to award an asset solely to one spouse as part of its just and reasonable property division. *Coffey v. Coffey,* 649 N.E.2d 1074, 1077 (Ind.Ct.App. 1995); *see also* Indiana Code § 31–15–7–5 (providing that the trial court may consider as evidence to rebut the presumptive equal distribution "the extent to which the property was acquired by each spouse before the marriage"). Even where the trial court properly sets aside the value of pre-marital assets to one spouse, the appreciation over the course of the marriage is a divisible marital asset. *Doyle v. Doyle,* 756 N.E.2d 576, 579 (Ind.Ct.App.2001).

Barry did not offer documentary exhibits or other evidence from which the trial court could determine the pre-marital value of pension funds as compared with their value at the date of separation. Nor did he offer evidence of the purchase price of the marital residence and the subsequent appreciation. Barry merely requested that the trial court set aside to him the entire current value of the marital residence and one-half of his pension funds, including all the appreciation and investment interest acquired during the sixteen-year marriage. In light of the applicable law, it is apparent that the result desired by Barry was not available to him.

Moreover, Barry did not present sufficient evidence to rebut the presumption of an equal division of marital assets. Barry is closer to traditional retirement age than is Jill. However, his retirement is not imminent, and he earns over $100,000 per year. He attained the status of a tenured full professor at Purdue University. Meanwhile, Jill had been unemployed for two years and receiving treatment for clinical depression. She had repeatedly relocated in deference to the advancement of Barry's career. She has a more limited work history than Barry's and an expectation of lesser future earnings. Finally, the trial court found that Barry had dissipated substantial marital assets. The statutory factors, considered in their entirety, do not

militate toward an unequal division of marital assets in Barry's favor.

Barry has not overcome the strong presumption that the trial court considered and complied with Indiana Code Section 31–15–7–5 when equally dividing the marital estate.

## II. Tax Consequences

■ Barry also challenges the order that he reimburse Jill for tax consequences if she timely elects to liquidate a portion of the pension funds. He claims that such tax consequences do not directly arise from the property distribution order and thus the order for reimbursement is erroneous.

■ Barry directs our attention to Indiana Code Section 31–15–7–7, which provides that the trial court "in determining what is just and reasonable in dividing property under this chapter, shall consider the tax consequences of the property disposition with respect to the present and future economic circumstances of each party." The statute requires the trial court to consider only the direct or inherent and necessarily incurred tax consequences of the property disposition. *Harlan v. Harlan*, 560 N.E.2d 1246 (Ind.1990).

■ Barry correctly observes that tax consequences are not necessarily incurred in the instant scenario. Immediate tax consequences would ensue only if Jill chooses to timely liquidate pension funds and Barry elects not to provide her with cash from an alternative source. However, although Indiana Code Section 31–15–7–7 mandates only the consideration of direct or inherent consequences of the property disposition, we do not read into the statute a prohibition against the trial court's permissive consideration of tax consequences caused by the choice of one party to dissipate the liquidity of the marital estate.

Here, tax consequences would stem not from the property disposition order but would rather be attributable to Barry's depletion of liquid assets. The trial court found that Barry dissipated marital assets as follows:

Sometime in February of 2006, the Husband began transferring joint funds from an account at Purdue Employees Federal Credit Union to an account set up in his sole name. After May of 2006, the Husband began to dissipate assets of the parties, transferring certificates of deposit into accounts in his name only, and closed out Harvard bank accounts in his name. From the funds contained in those accounts, the Husband began traveling for pleasure, taking several trips to Asia, Japan, and other foreign countries, in most cases accompanied by a female companion whose travels were financed for the most part by the Husband. The Husband admitted spending over $30,000, at one point, to pay for an apartment in Taipei, China including the costs of residing there, along with his companion, for over a month. In addition, the Husband spent over $50,000 in other travels over a four month period and transferred over $80,000 to his son during that time. In June of 2006, the Husband withdrew from joint accounts approximately $200,000 to set up a trust fund for his son, his daughter, and his granddaughter. After that, the Husband mortgaged the marital home at 910 Vine Street, which, at the time, had no existing mortgage, receiving approximately $121,000 from the loan which was spent by the Husband on travels, gifts to his children, and other expenditures unaccounted for. Finally, during this period of time, the Husband also transferred $283,000 out of his TIAA–CREF account at Purdue into a high risk retirement account at UBS in Chicago.

(App.8–9.) The trial court found it desirable, in effecting a just and reasonable property division, to provide Jill (who had no other source of income) with some liquidity. However, Barry had substantially depleted the parties' liquid funds. At the final hearing, when the trial court questioned where cash could be obtained, Barry's counsel conceded: "It would have to come out of the pension, Your Honor. That's all there is." (Tr. 33.)

Pursuant to Indiana Code Section 31–15–7–5, the trial court is charged with effecting a "just and reasonable" disposition of the marital estate. To require the party who has not dissipated assets to bear the attendant costs of asset dissipation would not effect a just and reasonable division. Additionally, Barry is in the best position to avoid tax consequences as he may be able to recoup some monies transferred to others and pay Jill $137,500 in cash to prevent any liquidation of pension funds.

Barry has not demonstrated reversible error in the allocation of tax consequences.

### Conclusion

We find no abuse of discretion in the trial court's decision to divide the marital estate equally, in accordance with the statutory presumption that an equal division is just and reasonable. Nor do we find an abuse of discretion in the trial court's allocation of tax consequences.

Affirmed.

FRIEDLANDER, J., and KIRSCH, J., concur.