

FILED

May 26 2023, 8:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christian P. Skordos
Cordell & Cordell, P.C.
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE

Thomas L. Stucky
Stucky, Lauer & Young LLP
Fort Wayne, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

Craig Randolph,

*Appellant-Petitioner,*

v.

Karen A. Randolph,

*Appellee-Respondent.*

May 26, 2023

Court of Appeals Case No.
22A-DC-1972

Appeal from the Allen Superior
Court

The Honorable Lori K. Morgan,
Judge

Trial Court Cause No.
02D08-2102-DC-171

**Opinion by Judge Tavitas**
Judges Vaidik and Foley concur.

**Tavitas, Judge.**

## Case Summary

[1]     Craig Randolph ("Father") appeals the trial court's dissolution of his marriage
to Karen Randolph ("Mother"). Father argues that the trial court erred by: (1)
restricting his parenting time with their child; (2) including his pre-marital

retirement account in the marital estate; and (3) awarding Mother sixty percent of the marital estate. On cross-appeal, Mother argues that she should be awarded appellate attorney fees for defending against Father's appeal. We find Father's arguments to be without merit and that Mother is not entitled to appellate attorney fees. Accordingly, we affirm.

## Issues

Father raises three issues, and Mother raises one issue, which we restate as:

> I. Whether the trial court improperly restricted Father's parenting time.
>
> II. Whether the trial court abused its discretion by including Father's pre-marital retirement account in the marital estate.
>
> III. Whether the trial court abused its discretion by awarding Mother sixty percent of the marital estate.
>
> IV. Whether Mother is entitled to appellate attorney fees.

## Facts

Father and Mother were married in October 2003, and their daughter, E.R., was born in January 2006. Mother also had two older children from a previous relationship. The parties separated in February 2021, and Father filed a petition for dissolution of marriage.

[4]     Prior to the parties' marriage, Father and Mother each owned a residence. The parties sold both residences and purchased a marital residence in Fort Wayne.

[5]     Father is a mechanical engineer. Prior to the parties' marriage, Father worked at Navistar and had a 401(k) retirement account, which Father estimated was valued at $85,000 at the time of the marriage. Father stopped making contributions to the account shortly before the marriage. At the time of the petition for dissolution, the 401(k) was valued at $248,854.72.

[6]     Father's employment with Navistar ended in 2011, and Father began doing contract work. Beginning in approximately 2015, Father's employment was often out of town, and he returned home on the weekends. For two years, he was employed in Wisconsin and returned home every other weekend. Since the start of the Covid-19 pandemic, Father has worked from home.

[7]     At the beginning of the marriage, Mother had student loans of approximately $33,000. Mother is a nurse and worked in a doctor's office until E.R. was born. Mother stayed home to care for the children until E.R. was eight years old. Mother then worked weekends as a surgical nurse in a hospital. Approximately five or six years ago, Mother began working as a school nurse.

[8]     In April 2021, the trial court entered provisional orders that provided, in part, for joint legal custody of E.R. with Mother having primary physical custody and Father having parenting time as follows:

> [Father] is granted parenting time with [E.R.] pursuant to the provisions of the Indiana Parenting Time Guidelines. Until such

time, if ever, that [Father] is again required to work out of state, he is granted additional overnight parenting times on one [weekday] overnight each week. The express intent of this order is that the child stay with [Father] during the school hours on the day of and the day following the weekday overnight parenting times so that he may assist her with her virtual school attendance.

Appellant's App. Vol. II p. 17. The trial court granted Mother temporary possession of the marital residence for four months, at which time Mother would vacate the marital residence and give possession of the residence to Father.

[9] During Mother's possession of the marital residence, Father relocated to a camper at a lake in Steuben County, which was forty-five miles away from Fort Wayne. E.R.'s relationship with Father is strained, and E.R. did not want to visit Father at the camper. E.R. and Father disagreed about E.R.'s participation in extracurricular activities because they interfered with parenting time, and they disagreed regarding E.R.'s desire to have employment.

[10] The parties participated in therapy with Timothy Theye. Theye opined that the "biggest issue" in the relationship between Father and E.R. is that Father has "very rigid ideas in terms of parenting [ ] that tend[ ] to irritate" E.R. Tr. Vol. II p. 10. Theye was concerned that E.R.'s psychological and emotional development "could [be] adversely impact[ed]" if she was forced to meet Father's parenting time demands. *Id.* at 16. Theye was also concerned that E.R. will "reject [Father] all together [sic]" when she turns eighteen years old if

he "continued to push [E.R.] for parenting time that she's not comfortable with." *Id.* at 17.  Theye supported E.R.'s request for parenting time consisting of a Saturday overnight every other weekend and a mid-week evening visit without an overnight.

[11] The trial court appointed a Guardian ad litem ("GAL"), who believed that Father and E.R. have "very different" personalities, which "clash."  Tr. Vol. III p. 74.  The GAL noted that "there doesn't seem to be a whole lot of empathy on either one of their parts about how the other one feels . . . ."  *Id.*  She believed that Father, Mother, and E.R. were "a lot alike . . . in that, they want what they want when they want it and why they want it."  *Id.* at 75.  The GAL had hoped that therapy would improve the relationship between Father and E.R., but it did not.  The GAL shared Theye's concerns and also supported E.R.'s proposed parenting time schedule.

[12] The trial court held a final hearing in April 2022.  At the hearing, Father requested seventy-one percent of the marital estate, and Mother requested sixty percent of the marital estate.  The trial court conducted an in camera interview with E.R.  The trial court then entered findings of fact and conclusions thereon.  The trial court awarded the parties joint legal custody of E.R. with Mother having primary physical custody.  Regarding Father's parenting time, the trial court found:

> 71.  [Father] argues that [Mother] and [GAL]'s position with regard to the modification of his parenting time amounts to a restriction on his parenting time and in order to grant the request

of [Mother] and modify and "restrict" his parenting time as requested by [Mother] and [GAL], the Court must find that continuing the current parenting time schedule in full force and effect might endanger the child's physical health or significantly impair the child's emotional development.

* * * * *

74. The child is experiencing anxiety, nausea and vomiting associated with parenting time with [Father]. The Court finds that modifying the parenting time schedule to alternate weekends from Saturday overnight to the next day (Sunday) and mid-week for up to four hours as well as alternate holidays and extended parenting time pursuant to the Indiana Parenting Time Guidelines is in the minor child's best interests and that said schedule does not amount to a "restriction" of [Father's] parenting time requiring the Court to find that the continued exercise of the current schedule might endanger the child's physical health or significantly impair the child's emotional development. In the event that it is determined that such a finding is required, there was sufficient evidence presented at trial demonstrating that the child might suffer emotional harm if the current parenting time schedule was maintained in full force and effect and therefore, the Court[] further finds[] that the current schedule is not in the child's best interests as it might endanger the child's physical health or significantly impair her emotional development due to the decline in the parent-child relationship between [Father] and child.

75. The Court finds that the parenting time schedule that is in the child's best interests is the schedule that provides [Father] with parenting time with [E.R.] on alternate weekends commencing on Saturday overnight with mid-week parenting time for up to four (4) hours and holiday and extended parenting time pursuant to the dictates of the Indiana Parenting Time Guidelines.

Appellant's App. Vol. II pp. 66-68. Thus, the trial court granted Father parenting time with H.R. on "alternate weekends commencing on Saturday at 12:00 p.m. and concluding the next day (Sunday) at 6:00 p.m., as well as mid-week (each week) for 4 hours and alternate holidays and extended parenting time pursuant to the provisions of the Indiana Parenting Time Guidelines." *Id.* at 83.

[13] Regarding the parties' marital estate, the trial court included Father's entire Navistar 401(k) in the marital estate and divided the marital estate as follows:

> 93. In considering the requirements of Ind. Code §31-15-7-5, the Court finds that both spouses contributed to the acquisition of property whether it was income producing or non-income producing. [Father] was employed during the majority of the parties' marriage, however, there were a few short periods of time when he was without employment while he was looking for a new job. [Mother] was employed during portions of the parties' marriage. There was a period of time when she did not work because she was at home with the parties' child and providing care for her as well as managing the household responsibilities. As it relates to the second statutory factor, [Father] had a 401([k) through Navistar at the time of the parties' marriage. The value of the plan at the time of the marriage was $84,000.00. He has not personally made a contribution to the plan since the date of the parties' marriage, however the value of the plan has increased significantly over the course of the parties' marriage. [Father] had approximately Thirteen Thousand Dollars ($13,000.00) of credit card debt just prior to the parties' marriage that the parties paid off while [Father] was residing with [Mother] in her home. [Mother] brought approximately Thirty-Three Thousand Dollars ($33,000.00) of student loan debt into the marriage. With regard to the third statutory factor, the Court finds that [Father] earns

more than twice the income that [Mother] earns from his [sic] employment and is likely to continue doing so into the future. As it relates to the fourth statutory factor, there is no credible evidence at trial that either party has dissipated marital assets. As it relates to the fifth statutory factor, the Court finds that [Father] earns more than twice the income that [Mother] earns from employment. He has historically earned a higher income than [Mother] and will likely continue to do so into the future. He has been awarded more of the marital assets that will afford him the opportunity to continue to build upon his wealth and earning potential. In light of these considerations, the Court finds that [Mother] has rebutted the presumption that a 50-50 division of the marital estate is just and reasonable and the Court, therefore, finds that the entry of an order awarding [Father] 40% and [Mother] 60% of the marital estate is appropriate.

*Id.* at 74-75. Father now appeals.

## Discussion and Decision

[14] In addressing the parties' dissolution of marriage, the trial court entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A), which "prohibits a reviewing court on appeal from setting aside the trial court's judgment 'unless clearly erroneous.'" *Smith v. Smith*, 194 N.E.3d 63, 72 (Ind. Ct. App. 2022) (quoting *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996)). "When a trial court has made special findings of fact, as it did in this case, its judgment is clearly erroneous only if (i) its findings of fact do not support its conclusions of law or (ii) its conclusions of law do not support its judgment." *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Id.*

## *I. Parenting Time*

Father first challenges the trial court's parenting time order. Parenting time decisions require us to "give foremost consideration to the best interests of the child." *Perkinson v. Perkinson*, 989 N.E.2d 758, 761 (Ind. 2013). We review parenting time decisions for an abuse of discretion. *Id.* "Judgments in custody matters typically turn on the facts and will be set aside only when they are clearly erroneous." *Id.* (citing *Baxendale v. Raich*, 878 N.E.2d 1252, 1257 (Ind. 2008)). "We will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment." *Id.*

Father argues that the trial court abused its discretion by "restricting" his parenting time with E.R. Appellant's Br. p. 14. Father contends that the trial court "reduced a parenting time order that exceeded the schedule laid out in the Indiana Parenting Time Guidelines to one that was significantly less." *Id.* at 15. Under the provisional order, Father was entitled to two overnights on alternating weekends and one mid-week overnight each week. Under the dissolution decree, however, Father was granted one overnight on alternating weekends and one mid-week visit of four hours. According to Father, in order to "restrict" his parenting time, the trial court was required to find that parenting time **would** endanger the child's physical health or significantly impair the child's emotional development, and the trial court did not make such a finding.

Father relies upon Indiana Code Section 31-17-4-2, which provides:

> The court may **modify** an order granting or denying parenting
> time rights whenever modification would serve the best interests
> of the child. However, the court shall not **restrict** a parent's
> parenting time rights unless the court finds that the parenting
> time **might** endanger the child's physical health or significantly
> impair the child's emotional development.

(emphasis added).[1]

[18]    First, we note that this statute applies to the **modification** of parenting time rights. Here, however, the trial court made an **initial** determination regarding Father's parenting time rights, not a modification of parenting time rights. The provisional order was not a final determination of parenting time rights; rather, the provisional order was "temporary in nature and terminate[d] when the final dissolution decree [was] entered or the petition for dissolution [was] dismissed." *Linenburg v. Linenburg*, 948 N.E.2d 1193, 1196 (Ind. Ct. App. 2011). Accordingly, Indiana Code Section 31-17-4-2 does not apply here.

[19]    Applicable here, Indiana Code Section 31-17-4-1 provides: "[A] parent not granted custody of the child is entitled to **reasonable parenting time rights** unless the court finds, after a hearing, that parenting time by the noncustodial parent might endanger the child's physical health or significantly impair the

---

[1] Although the statute uses the word "might," our Supreme Court has held: "Extraordinary circumstances must exist to deny parenting time to a parent . . . . If the trial court finds such extraordinary circumstances do exist, then the trial court shall make specific findings regarding its conclusion that parenting time **would** endanger the child's physical health or significantly impair the child's emotional development." *Perkinson*, 989 N.E.2d at 765 (emphasis added).

child's emotional development." (emphasis added). Thus, we will address whether a finding that parenting time would endanger the child's physical health or significantly impair the child's emotional development was required here.

[20] Father seems to argue that any deviation of parenting time below that recommended by the Indiana Parenting Time Guidelines amounts to a "restriction" requiring a finding that parenting time would endanger the child's physical health or significantly impair the child's emotional development. The Guidelines, however, specifically allow "[d]eviations from these Guidelines by either the parties or the court that result in parenting time less than the minimum time set forth below" provided that the deviations are "accompanied by a written explanation indicating why the deviation is necessary or appropriate in the case." Ind. Parenting Time G. Preamble. Accordingly, there is a difference between a "restriction" of parenting time, which requires a finding of endangerment or impairment, and a "deviation" from the parenting time contemplated by the Guidelines, which requires only a written explanation from the trial court.

[21] We addressed a similar issue in *In Re of Paternity of J.K.*, 184 N.E.3d 658, 666 (Ind. Ct. App. 2022). There, a father challenged the modification of his parenting time to his teenage son in the context of the paternity statutes, Indiana Code Section 31-14-14-1 and Indiana Code Section 31-14-14-2, which

are similar to the statutes at issue here.[2]  Distance was a major factor in the trial court's decision to modify parenting time, as the father lived in Texas, and the teenage son lived in Indiana; the father argued that the trial court "restricted" his parenting time by awarding less parenting time than that contemplated by the Guidelines.  *In re Paternity of J.K.*, 184 N.E.3d at 665.  We concluded that the trial court's parenting time award was reasonable.

[22]  We first held that the trial court's parenting time award was consistent with the Guidelines.  Moreover, we held:

> [E]ven if the parenting time order was inconsistent with the minimums established by the Guidelines, we do not find that the parenting time ordered was unreasonable such that a finding of endangerment or impairment under Indiana Code Section 31-14-14-1 would be required.  **We are not aware of any authority establishing that a parenting time award that falls below the presumptive minimums set forth in the Parenting Time Guidelines is per se unreasonable for purposes of Indiana Code Section 31-14-14-1**  Thus, even if we were to accept Father's claim that the parenting time award fell below the minimums contemplated by the Guidelines, which we do not, that does not necessarily render the parenting time award here unreasonable.

*J.K.*, 184 N.E.3d at 666 (emphasis added).

---

[2] Indiana Code Section 31-14-14-1(a) provides: "A noncustodial parent is entitled to reasonable parenting time rights unless the court finds, after a hearing, that parenting time might: (1) endanger the child's physical health and well-being; or (2) significantly impair the child's emotional development."  Indiana Code Section 31-14-14-2 provides: "The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child."

We further noted:

> It surely cannot be the case [ ] that any alteration in parenting time amount or condition imposed upon how parenting time is to be spent constitutes an unreasonable restriction of parenting time rights under Indiana Code Section 31-14-14-1. The practical result would be that any parenting time order that does not match the Guidelines verbatim is only justifiable if the child is in danger. Reading Indiana Code Section 31-14-14-1 in its entirety, however, gives the proper context to the meaning of the statute as a whole. Specifically, the statute references situations in which supervised parenting time should or must be ordered. Accordingly, supervised parenting time requires a finding that the supervision restriction be justified by a risk of harm to the child. *See* I.C. § 31-14-14-1(d)-(e). The contemplated factual finding is only required where parenting time rights are curtailed in an unreasonable manner. To require a factual finding of threat of harm to the child in order to justify any departure from our Parenting Time Guidelines would be to defy the fact-sensitive, nuanced nature of the trial court's endeavor. We cannot conclude that the legislature intended to impose such a significant handicap on such a sensitive function of our State's courts, or to rob those courts of the flexibility given to them by the Guidelines. They are, after all, guidelines. As always, the focus of a trial court's considerations when modifying parenting time must be reasonableness and the best interests of the child.
>
> Indeed, the Guidelines contemplate deviations below the so-called minimum and require simply that such deviations be "accompanied by a written explanation indicating why the deviation was necessary or appropriate in the case." Ind. Parenting Time Guidelines Preamble (C)(3).

*Id.* at 666-67 (footnote and record citation omitted).

[24] In applying these principles to this case, we cannot say that Father's parenting time was "restricted" or that the parenting time awarded by the trial court was unreasonable. First, Father does not explain how the parenting time schedule ordered by the trial court differs from the Indiana Parenting Time Guidelines. Parenting Time Guideline II(E) applies to adolescents and teenagers and provides:

> 1. Regular Parenting Time. Regular parenting time by the noncustodial parent on alternating weekends, during holidays, and for an extended time during the summer months as set forth in the Parenting Time Guidelines (Section II. D.) shall apply to the adolescent and teenager.

> 2. Special Considerations. In exercising parenting time with a teenager, the noncustodial parent shall make reasonable efforts to accommodate a teenager's participation in his or her regular academic, extracurricular and social activities.

Accordingly, under the Guidelines for teenagers, Father would have been entitled to parenting time on alternating weekends, certain holidays, and extended time during the summer. The trial court here reduced the weekend parenting time to eliminate Friday overnights but added a four hour visit during the week, which is not part of the Guidelines for teenagers.[3]

---

[3] There is a conflict between the Guidelines for parenting time with teenagers and the commentary. The commentary to the Guidelines for parenting time with teenagers gives an example for a student athlete and implies that a mid-week visit is required. The Guidelines for teenagers, however, do not require such a mid-week visit.

[25] This is not a case where Father's parenting time was eliminated, required to be supervised, or significantly deviated from the Guidelines. *See, e.g., J.M. v. N.M.*, 844 N.E.2d 590, 600 (Ind. Ct. App. 2006) (addressing whether parenting time would significantly impair the child's emotional development where the trial court ordered supervised parenting time), *trans. denied*; *Barger v. Pate*, 831 N.E.2d 758, 763 (Ind. Ct. App. 2005) (addressing the same where, at mother's discretion, father was not allowed parenting time with one child when another child was present); *Duncan v. Duncan*, 843 N.E.2d 966, 972 (Ind. Ct. App. 2006) (addressing the same where father molested one of the three children), *trans. denied*. Accordingly, we cannot conclude that Father's parenting time was restricted in a manner that required a written finding that parenting time would endanger E.R.'s physical health or significantly impair her emotional development.

[26] Nevertheless, the trial court's parenting time schedule did deviate from the Guidelines, and the trial court was required to issue a written explanation for the deviation. The trial court properly explained the deviation by noting that E.R. was "experiencing anxiety, nausea and vomiting associated with parenting time" with Father. Appellant's App. Vol. II p. 67. E.R.'s relationship with Father was significantly strained at that time. E.R. proposed the parenting time schedule awarded by the trial court, and the GAL and therapist agreed that the proposed schedule was in E.R.'s best interest. Under these circumstances, we cannot say that the parenting time award was unreasonable.

## II. Marital Estate

[27] Next, Father challenges the trial court's inclusion of his entire Navistar 401(k) in the marital estate. "It is well settled that in a dissolution action, all marital property goes into the marital pot for division, whether it was owned by either spouse before the marriage, acquired by either spouse after the marriage and before final separation of the parties, or acquired by their joint efforts." *Falatovics v. Falatovics*, 15 N.E.3d 108, 110 (Ind. Ct. App. 2014). Specifically, Indiana Code Section 31-15-7-4(a) provides:

> In an action for dissolution of marriage under IC 31-15-2-2, the court shall divide the property of the parties, whether:
>
> (1) owned by either spouse before the marriage;
>
> (2) acquired by either spouse in his or her own right:
>
> > (A) after the marriage; and
> >
> > (B) before final separation of the parties; or
>
> (3) acquired by their joint efforts.

For purposes of dissolution, property means "all the assets of either party or both parties." Ind. Code § 31-9-2-98. "Marital property includes both assets and liabilities." *McCord v. McCord*, 852 N.E.2d 35, 45 (Ind. Ct. App. 2006), *trans. denied*.

[28]     "'The requirement that all marital assets be placed in the marital pot is meant to insure [sic] that the trial court first determines that value before endeavoring to divide property.'" *Falatovics*, 15 N.E.3d at 110 (quoting *Montgomery v. Faust*, 910 N.E.2d 234, 238 (Ind. Ct. App. 2009)). "'Indiana's 'one pot' theory prohibits the exclusion of any asset in which a party has a vested interest from the scope of the trial court's power to divide and award.'" *Id.* (quoting *Wanner v. Hutchcroft*, 888 N.E.2d 260, 263 (Ind. Ct. App. 2008)). In general, "[w]hile the trial court may decide to award a particular asset solely to one spouse as part of its just and reasonable property division, it must first include the asset in its consideration of the marital estate to be divided." *Id.* "The systematic exclusion of any marital asset from the marital pot is erroneous." *Id.*

[29]     All assets and liabilities of both parties must be included in the marital pot. Accordingly, the trial court properly included the Navistar 401(k) in the marital pot. The trial court may then award a particular asset to one party as part of its division of the marital estate. *See* Ind. Code § 31-15-7-5. Moreover, "[e]ven where the trial court properly sets aside the value of premarital assets to one spouse, the appreciation over the course of the marriage is a divisible marital asset." *Wanner*, 888 N.E.2d at 263. The trial court did not abuse its discretion by including Father's Navistar 401(k) as a marital asset; rather, the trial court was required to consider all property obtained prior to the filing of the petition. *See, e.g., Meyer v. East*, 205 N.E.3d 1066, 1072 (Ind. Ct. App. 2023) (holding that the trial court properly included assets in the marital estate but abused its discretion by excluding a liability from the marital estate).

### III. *Division of the Marital Estate*

[30] Next, Father argues that the trial court's division of the marital estate was an abuse of discretion. "'The party challenging the trial court's property division bears the burden of proof.'" *Smith*, 194 N.E.3d at 72 (quoting *Smith v. Smith*, 854 N.E.2d 1, 5 (Ind. Ct. App. 2006)). "That party must overcome a strong presumption that the court complied with the statute and considered the evidence on each of the statutory factors." *Id*.; *see* Ind. Code § 31-15-7-5. "The presumption that a dissolution court correctly followed the law and made all the proper considerations when dividing the property is one of the strongest presumptions applicable to our consideration on appeal." *Smith*, 194 N.E.3d at 72. "Thus, we will reverse a property distribution only if there is no rational basis for the award." *Id*.

[31] Pursuant to Indiana Code Section 31-15-7-4(b), the trial court "shall divide the property in a just and reasonable manner. . . ." We "presume that an equal division of the marital property between the parties is just and reasonable." I.C. § 31-15-7-5.

> However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:
>
> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse:

> (A) before the marriage; or

> (B) through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

> (A) a final division of property; and

> (B) a final determination of the property rights of the parties.

*Id.*

[32]     "After determining what constitutes marital property, the trial court must then divide the marital property under the presumption that an equal division is just and reasonable." *Eads v. Eads,* 114 N.E.3d 868, 874 (Ind. Ct. App. 2018). The presumption of an equal division may be rebutted by the presentation of certain factors detailed in Indiana Code Section 31-15-7-5. The trial court, however,

must state its reasons for deviating from the presumption of an equal division in its findings and judgment. *Eads,* 114 N.E.3d at 874.

[33] Here, both parties requested an unequal division of the marital estate. Father requested seventy percent of the marital estate, while Mother requested sixty percent. The trial court found that a deviation from the presumption of an equal division was just and reasonable and awarded Mother sixty percent of the marital estate. The trial court noted that: (1) both parties contributed to the acquisition of property, whether by income-producing employment or by providing care to E.R.; (2) Father's Navistar 401(k) significantly increased during the marriage, the parties paid off $13,000 of Father's credit card debit shortly before the marriage, and Mother had $33,000 in student loan debt at the time of the marriage; (3) Father earns more than twice Mother's income; (4) no evidence of dissipation of assets was presented; and (5) Father will likely continue to earn significantly more income than Mother.

[34] Father, however, argues that Mother voluntarily remained unemployed for several years despite economic difficulties in the family; Father worked "long and difficult hours" during the marriage and desired to work less for the sake of his health; and the order "forces Father to liquidate his primary retirement account and continue working hours that are detrimental to his health in order to replace his lost retirement funds." Appellant's Br. pp. 18-19.

[35] At the time of the dissolution hearing, Mother was sixty years old, and Father was fifty-four years old. Father earned more than twice Mother's income.

Although Father entered the marriage with his Navistar 401(k), the account's value significantly increased during the marriage. Moreover, Father's future earning potential is significantly greater than Mother's future earning potential given their age differences and income levels. Father presented evidence of his dissatisfaction with his employment, but the trial court was required to weigh this evidence against other factors here. We will not substitute our judgment for that of the trial court; the trial court's division of marital property was just and reasonable and supported by a rational basis. *See, e.g., Hartley v. Hartley*, 862 N.E.2d 274, 286 (Ind. Ct. App. 2007) (affirming the trial court's sixty percent/forty percent division of the marital estate).

### IV. *Appellate Attorney Fees*

[36] As a final matter, we address Mother's request for attorney fees pursuant to Indiana Appellate Rule 66. "Our discretion to award attorney fees under Indiana Appellate Rule 66(E) is limited to instances when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Thacker v. Wentzel*, 797 N.E.2d 342, 346 (Ind. Ct. App. 2003). Mother makes no argument explaining how Father's appeal was frivolous or in bad faith. While we find Father's argument unpersuasive, we cannot say that his appeal was permeated with frivolous claims or brought in bad faith. Accordingly, we decline Mother's request for appellate attorney fees. *See, e.g., Falatovics v. Falatovics*, 72 N.E.3d 472, 481-82 (Ind. Ct. App. 2017) (declining to award appellate attorney fees).

## Conclusion

[37] Father's parenting time was reasonable; the trial court properly included Father's Navistar 401(k) in the marital estate; and the trial court did not abuse its discretion in dividing the marital estate. Moreover, Mother fails to demonstrate that she is entitled to appellate attorney fees. Accordingly, we affirm.

[38] Affirmed.

Vaidik, J., and Foley, J., concur.