


FILED

Dec 18 2024, 8:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

### Leesa A. Gatton,

*Appellant-Respondent*

v.

### Robert D. Gatton,

*Appellee-Petitioner*

---

December 18, 2024

Court of Appeals Case No.
24A-DN-716

Appeal from the Allen Circuit Court

The Honorable Jesus R. Treviño, Magistrate

Trial Court Cause No.
02C01-2212-DN-1447

---

**Opinion by Senior Judge Crone**
Judges Bradford and Tavitas concur.

**Crone, Senior Judge.**

## Case Summary

[1] Following the trial court's dissolution of the marriage between Leesa A. Gatton (Wife) and Robert D. Gatton (Husband), Wife argues that the trial court erred in its treatment of Husband's pension and in failing to include Husband's individual retirement account (IRA) in the marital estate. Finding no reversible error, we affirm.

## Facts and Procedural History[1]

[2] Husband and Wife were married in March 2010. No children were born of the marriage. Husband filed a petition to dissolve the marriage on December 20, 2022. The parties filed a stipulated inventory of all assets and liabilities that existed at the time of filing. The parties agreed on the values and distribution of most of the assets, with the exception of the value of Husband's pension and one of Wife's two pensions and the distribution of the net proceeds from the sale of the marital residence. Wife requested findings pursuant to Indiana Trial Rule 52(A) and filed a pretrial brief. An evidentiary hearing was held on October 24, 2023. The trial court gave the parties until November 27 to submit proposed findings. Only Husband did so.

---

[1] We remind Wife's counsel that facts in an appellant's brief "shall be stated in accordance with the standard of review appropriate to the judgment or order being appealed" and "shall not be a witness by witness summary of the testimony." Ind. Appellate Rule 46(A)(6).

In February 2024, the trial court issued a dissolution decree that reads in pertinent part as follows:

### I. FINDINGS OF FACT:

….

### B. MARITAL ESTATE

5. Husband retired approximately five months after the parties' marriage on August 1, 2010 and started collecting $1,653.00 in gross monthly social security benefits and $3,020.00 in gross monthly Carpenter's Union pension benefits.

6. Wife was employed at UPS during most of the marriage and was employed by TForce[2] at $23.90 per hour and at a 20-hour work week at the time the trial took place.

….

8. In September 2008, Wife moved from her rental home on Harrison Street to a residence on Ardmore Avenue.

9. Husband followed Wife from the Harrison Street residence to live in the Ardmore Avenue residence when she purchased it in September 2008.

10. In January 2010, before Husband and Wife married, the City of Fort Wayne condemned a portion of Wife's real estate that abutted the Ardmore Avenue residence. The city paid Wife $22,000.00 for the real estate ….

---

[2] The name of this entity is spelled "TForce," "Tforce," and "T-Force" at various points in the record.

11. On September 5, 2021, Husband was added to the Ardmore Avenue residence's title via a Quit Claim Deed from Wife to Wife and Husband. Also, in 2021, Wife and Husband executed a new 2.25% promissory note and associated $114,000.00 mortgage with PNC Bank for the Ardmore Avenue residence. No additional sums were added to the prior balance as this transaction was completed to lower the prior interest rate and obtain a 15-year loan.

12. The Ardmore Avenue residence was sold on January 27, 2023, for a net sale price of $82,395.00. The net sale proceeds were placed in [Wife's counsel's] Trust Account subject to further agreement of the parties or court order. All funds remain in the Trust Account as of the trial date.

13. Husband did contribute sweat equity to the remodeling and repair of the Ardmore Avenue residence. From at least 2013 until the date of separation in 2022, it is documented that Husband contributed financially towards maintaining the home and household expenses.

14. A major point of contention during the trial was who would receive the net sale proceeds of the Ardmore Avenue residence. Husband wanted 100% of the Ardmore Avenue net sale proceeds given to him. Wife wanted 100% of the Ardmore Avenue net sale proceeds given to her.

15. When Husband got divorced from his prior wife on November 22, 2008, he was ordered to pay one-third (1/3) of his son Christopher's post-secondary education expenses. The parties stipulated to $31,119.00 as the amount outstanding by way of a student loan associated with this expense.

16. Husband and Wife both used Dulin, Ward & DeWald to appraise all pensions and stipulated to their admissibility subject to cross-examination and argument.

17. Husband's appraisal of his Carpenter Union's Pension established that its vested value on the date of filing was $421,265.00 and that the value earned after the parties married on March 14, 2010 was $5,062.00 ….

….

23. Regarding Wife's T-Force Pension, there is no dispute that this pension accrued during the marriage.… [T]he Court finds the reasonable value of Wife's T-Force Freight monthly pension benefit at $24,690.00 and includes it at that value in the parties' marital estate.

24. Regarding Husband's Carpenter's Union Pension, the only dispute relates to whether the Court includes just the marital coverture portion of this Pension in the marital estate or includes the value of the entire pension benefit. After taking into consideration the entire value of the pension benefit, trial courts in Indiana have the discretion to include just the marital coverture portion of a party's pension interest in its identification of the assets and debts within the marital estate. A number of Indiana cases emphasize that historical treatment and exercise of discretion.… This line of cases concluded in *Morey v. Morey*, 49 [N.E.3d] 1065 (Ind. Ct. App. 2016) in which Judge Mathias stated, "In Indiana, trial courts have historically exercised their discretion to apply the coverture fraction … formula when allocating and distributing pension and retirement benefits in dissolution of marriage proceedings[.]" *Id.* [at] 1071. Mathias went on to state, "Division of marital assets and the application of the coverture fraction formula in a dissolution of marriage proceeding is a multi-step process… Importantly, the pre-marital portion of the benefit is then set aside for the spouse who acquired it, for distribution outside of the division of the assets in the marital pot." *Id.* [at] 1071, 1072.

In the present case, Valerie McHarry, the pension valuation professional hired by Wife's counsel, concluded her valuation of

Husband's Carpenters Union Pension … by stating specifically in her report, "Coverture calculation using coverture fraction formula." McHarry further identified that Husband retired 140 days after the parties married and that the coverture percentage was 1.2%. In other words, 98.8% of Husband's Pension accrued before the parties' marriage. McHarry then identified the marital coverture value at $5,061.98 ($5,062 rounded up). The total value of Husband's Pension was $421,265.00, an amount which is more than double the value of the entire marital estate.

Husband's Carpenters Union Pension had been an aspect of Husband's prior dissolution of marriage action in this same Court. More specifically, … this Court granted Husband's prior dissolution of marriage on November 21, 2008. Husband's prior marriage was 30 years in duration and encompassed almost the entire time of Husband's membership in the Carpenters Union which began in 1976. This Court granted Husband's prior wife a 20% Separate Interest by Qualified Domestic Relations Order in this Carpenters Union Pension.…

The parties enjoyed the benefit of Husband's receipt of his Carpenters Union Pension monthly benefit which he began receiving in August 2010. For 12 years of the marriage, this pension benefit helped Husband contribute to the family's finances until he filed this dissolution of marriage action in December 2022.

After taking into consideration the entire value of Husband's pension benefit, along with Indiana case law, this Court's prior QDRO relating to the same Pension, and Husband's receipt of this pension benefit for 12 years of the parties' marriage, this Court finds it is a reasonable exercise of its discretion to only include the marital coverture portion of Husband's Carpenters Union Pension monthly benefit valued at $5,062.

….

## II. CONCLUSIONS OF LAW, ORDER, AND JUDGMENT

## C. DIVISION OF MARITAL ESTATE:

….

28. Pursuant to I.C. 31-15-7-4(b), the trial court "shall divide the property in a just and reasonable manner." When a trial court divides the marital pot, it begins with the presumption that an equal division between the parties is just and reasonable. I.C. 31-15-7-5. The party seeking to rebut the presumption of an equal division of marital property bears the burden of proof.…

….

32. In dissolution actions, Indiana follows the "one pot" theory, meaning that all marital property is included in the marital pot for division, regardless of whether it was owned by one spouse before marriage, acquired by one spouse after the marriage and before final separation, or acquired through the joint efforts of both. Ind. Code § 31-15-7-4(a); *Falatovics v. Falatovics*, 15 N.E.3d 108, 110 (Ind. [Ct.] App. 2014). Including all marital assets in the marital pot ensures that the trial court will first determine the value of each asset before endeavoring to divide the property. *Id*. "While the trial court may decide to award a particular asset solely to one spouse as part of its just and reasonable property division, it must first include the asset in its consideration of the marital estate to be divided." *Id*. *Ahls v. Ahls*, 52 N.E.3d 797 (Ind. [Ct.] App. 2016); see also, *Kendrick v. Kendrick*, 44 N.E.3d 721 (Ind. [Ct.] App. 2015); *Barton v. Barton*, 47 N.E.3d 368 (Ind. [Ct.] App. 2015). Specifically, this Court has the discretion to consider the entire value of a [party's] pension but just include the marital coverture portion in its marital estate subject to division, *Morey v. Morey*, 49 N.E.[3d] 1065 (Ind. Ct. App. 2016), *Roetter v. Roetter*, 182 N.E.3d 221 (Ind. 2022).

33. Both parties were generally employed throughout their

marriage. Wife accumulated several retirement benefits as stipulated by the parties and as found by this Court, and the parties accumulated equity in the former marital residence which was sold as an aspect of this dissolution action. Wife purchased the marital residence … in 2008 for $81,000.00. Wife's down payment was approximately $3,000.00. Husband, as a carpenter, performed a number of repairs or improvements to this residence, including the conversion of a porch into a master bedroom. Both parties contributed financially to the costs of materials for these repairs and improvements, Wife from an inheritance she received from her father's death and Husband from his earnings. This residence was sold during these proceedings and the parties received net sales proceeds of $82,394.00. Both parties also contributed to the living expenses. Husband was able to document his contributions for at least 10 years from April 2013 through December 2022 when this dissolution action was filed. Prior to Husband being added to the deed of the marital residence in 2021, Wife was able to refinance the initial mortgage a number of times. On two occasions, she refinanced for more money than was owing on the existing mortgage so that she could pay off a car loan and contribute to the payment of her daughter's wedding. Husband received no proceeds from any of these refinancings. Husband also cashed in his 401(k) in 2020 to assist the parties in paying taxes.

34. Prior to the parties' marriage, the parties purchased the marital residence in Wife's name in 2008. At least some of Wife's inheritance of $20,000.00 was used to assist in the purchase of that residence and in Husband's conversion of a porch into a master bedroom. The Court was not presented information regarding the amount of this inheritance which remained on the date the parties married on March 17, 2010. Husband had accrued 98.8% of a pension benefit with his Carpenters Union prior to the parties' marriage. Husband had an unspecified liability at the time of the marriage relating to his son's (from his prior marriage) college education. While Husband did not know the amount he owned on the date of the marriage, he did indicate

that during the marriage he had paid upwards of $70,000.00 toward these college expenses while still owing the stipulated balance as of the date of the filing ($31,119).

35. At the time of the trial, Husband was 67 years old … and Wife was 66 years old …. Husband is retired from the Carpenters Union, unemployed, and recovering from two recent but separate cancer diagnoses, January 2022 and July 2023. Wife is employed on a part-time basis with T-Force Freight, receives several retirement benefits as well as her Social Security retirement benefit but has chosen not to commence her T-Force Freight pension, previously discussed.

36. The parties' future income earning abilities are not likely to change from their present economic circumstances, assuming Husband survives and Wife does not fully retire.

37. Neither party alleged dissipation or improper disposition of marital property.

38. As an aspect of Husband's request to this Court to only include the marital coverture value of his Carpenters Union Pension, Husband indicated he would waive receipt of any property equalization judgment. The Court will discuss this effort at waiver later in this Decree.

39. After considering and relating all of the testimony and evidence to the statutory considerations (and including only the coverture value of Husband's Pension), the Court concludes that neither party has rebutted the statutory presumption of an equal division of the marital estate.

Appealed Order at 1-10 (underlining and citations to exhibits omitted).

[4]     The trial court assigned certain assets and liabilities to Wife, including 100% of her T-Force pension valued at $24,690.00. The court also assigned certain assets

and liabilities to Husband, including 100% of the net proceeds from the sale of the marital residence valued at $82,295.00, 100% of the coverture value of his Carpenter's Union pension valued at $5,062.00, and 100% of the aforementioned student loan valued at negative $31,119.00. The court then made the following findings:

42. The net marital estate of the parties subject to the above division equals $153,185.00. Husband's receipt of $53,415.00 of the net marital estate equals his receipt of 35% of that estate. Wife's receipt of the $99,770.00 of the net marital estate equals her receipt of 65% of that estate.

….

50. In order to equalize the net marital estate consistent with the Court's determination that neither party had rebutted the presumption of an equal division of the marital estate, the Court would need to identify a property equalization judgment owing from Wife to Husband of $23,177.50. Even if the Court excluded the stipulated student loan owing by Husband of $31,119.00 from his award of assets and debts, Wife would still owe Husband a property equalization amount of approximately $7,600.00. After reviewing the award of assets to Wife herein, the only way that this Court could satisfy any equalization judgment owing from Wife to Husband would be to award Husband an interest in either Wife's UPS Pension which she is presently receiving [and/or] a percentage interest in her T-Force Freight Pension which she has yet to commence. **Husband specifically stated in response to questioning from his counsel that if the Court only included the coverture value of his pension in the marital estate, he did not want to receive any equalization judgment or any interest in Wife's pension or other retirement assets.** This Court, taking into consideration Wife's Verified Financial Disclosure, her income and other present economic

circumstances, and Husband's explicit testimony effectively waiving any claim to a property equalization judgment or the receipt of any of Wife's retirement assets to balance the distribution of the marital estate, **now orders that there is no property equalization judgment entered in this matter, notwithstanding the unequal distribution of assets and debts as herein before identified.**

51. The net sale proceeds from the sale of the parties' former marital residence of $82,295, presently held in trust with Wife's counsel's office, having been awarded to Husband herein, shall be distributed by Wife's counsel to Husband and his counsel within seven (7) days of this Decree.

*Id*. at 11-14.

[5] Wife filed a motion to correct error, which the trial court denied. This appeal ensued.

## Discussion and Decision

## Section 1 – The trial court should have included the entire present value of Husband's pension in the marital pot, but it did not abuse its discretion in dividing the marital estate.

[6] Wife first contends that the trial court erred in its purportedly "inconsistent treatment" of Husband's pension, Husband's student loan obligation, and the net proceeds from the sale of the marital residence. Appellant's Br. at 19. Wife characterizes the sale proceeds as her "pre-marital equity in the real estate she brought into the marriage[.]" *Id*. But Husband points out that "there was no

testimony that on the date of the marriage, Wife had premarital equity of a specific dollar amount." Appellee's Br. at 10. Husband further observes that he

> provided testimony which was not refuted by Wife that he was involved in the purchase of this real estate in 2008, did repairs and improvements to it prior to it being purchased in order that the purchase could go through, and made improvements to that real estate between the date of purchase and the date of marriage which might have been responsible for an increase in the value of this real estate, hence equity, prior to the parties' marriage.

*Id*. Accordingly, we do not consider Wife's argument as it pertains to the sale proceeds.

[7] Our well-settled standard of review, which Wife neglected to include in the argument section of her brief as required by Indiana Appellate Rule 46(A)(8)(b), provides that a trial court has broad discretion in valuing and dividing marital property. *Baglan v. Baglan*, 137 N.E.3d 271, 277 (Ind. Ct. App. 2019). We review a trial court's determination for an abuse of that discretion, and, so long as sufficient evidence and reasonable inferences support it, the court has not abused its discretion. *Id.*[3] In other words, we will not reverse unless the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id*. In reviewing a trial court's disposition of marital assets, we focus on what the court did and not on what it could have done.

---

[3] Wife raises several disparate arguments regarding the trial court's treatment of Husband's pension, all of which are variations on the central theme that the court abused its discretion in this regard.

*Alifimoff v. Stuart*, 192 N.E.3d 987, 998 (Ind. Ct. App. 2022), *trans. denied* (2023). "Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court." *Id.*

[8] Where, as here, the trial court issued findings and conclusions at a party's request, we first determine whether the evidence supports the findings and then determine whether the findings support the judgment. *Quinn v. Quinn*, 62 N.E.3d 1212, 1220 (Ind. Ct. App. 2016). "The trial court's findings are controlling unless the record includes no facts to support them either directly or by inference." *Id.* "We neither reweigh the evidence nor reassess witness credibility." *Barton*, 47 N.E.3d at 373. "We set aside a trial court's judgment only if it is clearly erroneous." *Quinn*, 62 N.E.3d at 1220. Clear error occurs when our review of the evidence most favorable to the judgment leaves us firmly convinced that a mistake has been made. *Id.* Wife does not specifically challenge any of the trial court's predicate findings.

[9] Indiana Code Section 31-15-7-4 governs the division of marital property, which "includes both assets and liabilities." *McCord v. McCord*, 852 N.E.2d 35, 45 (Ind. Ct. App. 2006), *trans. denied*. The statute reads in relevant part as follows:

> (a) In an action for dissolution of marriage …, the court shall divide the property of the parties, whether:
>
> > (1) owned by either spouse before the marriage;
> >
> > (2) acquired by either spouse in his or her own right:

(A) after the marriage; and

(B) before final separation of the parties; or

(3) acquired by their joint efforts.

(b) The court shall divide the property in a just and reasonable manner by:

(1) division of the property in kind;

(2) setting the property or parts of the property over to one (1) of the spouses and requiring either spouse to pay an amount, either in gross or in installments, that is just and proper;

(3) ordering the sale of the property under such conditions as the court prescribes and dividing the proceeds of the sale; or

(4) ordering the distribution of benefits described in IC 31-9-2-98(b)(2) or IC 31-9-2-98(b)(3)[4] that are payable after the dissolution of marriage, by setting aside to either of the

---

[4] Indiana Code Section 31-9-2-98(b) states in pertinent part,

"Property", for purposes of IC 31-15 …, means all the assets of either party or both parties, including:

…

(2) the right to receive pension or retirement benefits that are not forfeited upon termination of employment or that are vested (as defined in Section 411 of the Internal Revenue Code) but that are payable after the dissolution of marriage; and

(3) the right to receive disposable retired or retainer pay (as defined in 10 U.S.C. 1408(a)) acquired during the marriage that is or may be payable after the dissolution of marriage.

> parties a percentage of those payments either by
> assignment or in kind at the time of receipt.

Ind. Code § 31-15-7-4.

[10]    The trial court "shall presume that an equal division of the marital property between the parties is just and reasonable." Ind. Code § 31-15-7-5.

> However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:
>
>> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
>>
>> (2) The extent to which the property was acquired by each spouse:
>>
>>> (A) before the marriage; or
>>>
>>> (B) through inheritance or gift.
>>
>> (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.
>>
>> (4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

> (5) The earnings or earning ability of the parties as related to:

> > (A) a final division of property; and

> > (B) a final determination of the property rights of the parties.

*Id.*

[11] As this Court explained in *Falatovics*,

> It is well settled that in a dissolution action, all marital property goes into the marital pot for division, whether it was owned by either spouse before the marriage, acquired by either spouse after the marriage and before final separation of the parties, or acquired by their joint efforts. Ind. Code § 31-15-7-4(a); *Beard v. Beard,* 758 N.E.2d 1019, 1025 (Ind. Ct. App. 2001), *trans. denied* (2002). For purposes of dissolution, property means "*all* the assets of either party or both parties." Ind. Code § 31-9-2-98 (emphasis added). "The requirement that all marital assets be placed in the marital pot is meant to insure that the trial court first determines that value before endeavoring to divide property." *Montgomery v. Faust,* 910 N.E.2d 234, 238 (Ind. Ct. App. 2009). "Indiana's 'one pot' theory prohibits the exclusion of any asset in which a party has a vested interest from the scope of the trial court's power to divide and award." *Wanner v. Hutchcroft,* 888 N.E.2d 260, 263 (Ind. Ct. App. 2008). While the trial court may decide to award a particular asset solely to one spouse as part of its just and reasonable property division, it must first include the asset in its consideration of the marital estate to be divided. *Hill v. Hill,* 863 N.E.2d 456, 460 (Ind. Ct. App. 2007). The systematic exclusion of any marital asset from the marital pot is erroneous. *Wilson v. Wilson,* 409 N.E.2d 1169, 1173 (Ind. Ct. App. 1980).

15 N.E.3d at 110.

[12] Here, Wife takes issue with the trial court's decision to include only the coverture portion of Husband's pension in the marital pot while including the date-of-filing value of Husband's student loan obligation, characterizing this as "inconsistent treatment." Appellant's Br. at 19.[5] As for Wife's inconsistent-treatment claim, Husband correctly observes that "[t]he parties stipulated that [he] had a specific student loan obligation owing by him of $31,119[,]" which "had to be included in the trial court's marital estate because the parties stipulated that it existed on the date of filing." Appellee's Br. at 9. Husband further observes that, "[o]ther than conjecture, neither Wife, nor her counsel, nor Husband provided information as to what Husband may have owed on that student loan obligation on the date of the marriage, if anything." *Id.* Husband then asserts, "In the absence of information regarding the date of marriage balance, the trial court could not exercise its discretion on this particular debt to provide any relief to Wife even if it thought that appropriate." *Id.* We must agree.

[13] That said, we also must agree with Wife's claim that the trial court erred in including only the coverture portion of Husband's pension in the marital pot. In doing so, the trial court incorrectly relied on *Morey*, 49 N.E.3d 1065, which runs

---

[5] Wife asserts that "[t]he trial court's failure to apply a consistent approach to [these] items denied Wife equal application and protection of Indiana laws." Appellant's Br. at 16. Wife fails to develop an argument in support of this apparent allusion to Article 1, Section 23 of the Indiana Constitution.

afoul of Indiana Code Section 31-15-7-4 in stating that the premarital portion of an asset should be excluded from the marital pot. *See Morey*, 49 N.E.3d at 1071 ("First, the trial court should identify what assets should be segregated from the marital pot by operation of law. The coverture fraction formula at issue here is just one method that allows the spouse who acquired the asset to segregate what might otherwise be considered marital property from the marital pot."). [6] Section 31-15-7-4 says in no uncertain terms that "the court shall divide the property of the parties, whether … owned by either spouse before the marriage [or] acquired by either spouse in his or her own right" after the marriage and before final separation.

As mandated by statute, all assets must be included in the marital pot. If one of the assets is a retirement asset, then the coverture fraction formula is a useful means of determining which portion of the asset accrued prior to the marriage and which portion accrued after the marriage. [7] But it is unhelpful to view the premarital portion of the asset as not being subject to division. It is instead more helpful to view the entire retirement asset as being subject to division and the coverture fraction as a tool in helping a trial court determine how to distribute

---

[6] In *Barton*, this author stated that "the coverture fraction formula is applied to determine what portion of a retirement asset is subject to division." 47 N.E.3d at 380. While this is technically incorrect, the coverture fraction formula is a factor the trial court may utilize in determining what constitutes an equitable division of all of the marital assets.

[7] "Under this methodology, the value of the retirement plan is multiplied by a fraction, the numerator of which is the period of ti me during which the marriage existed (while pension rights were accruing) and the denominator is the total period of time during which pension rights accrued." *Hardin v. Hardin*, 964 N.E.2d 247, 250 (Ind. Ct. App. 2012) (emphasis in *Hardin* omitted) (quoting *In re Marriage of Preston*, 704 N.E.2d 1093, 1098 n.6 (Ind. Ct. App. 1999)).

the assets. *See Kendrick*, 44 N.E.3d at 729 ("The trial court included only the coverture fraction of Husband's pension in the marital estate for property division and failed to include the portion of his pension earned before the marriage. While the court may ultimately determine that the portion of Husband's pension earned prior to the marriage should be awarded solely to him, it must first include the asset in its consideration as to how the marital estate should be divided."). If the trial court uses the coverture fraction formula to award a greater share of the estate to a party, it should find the presumption of an equal distribution rebutted.

[15] For example: imagine a wife who has a vested retirement asset worth $500,000 after working for twenty years. She married her husband fifteen years after she started working, and this retirement asset constitutes the vast majority of the marital assets. Using the coverture fraction formula, one-fourth of the $500,000 retirement asset, or $125,000, accrued during the marriage, and the other three-fourths accrued prior to the marriage. If the trial court wishes to award the three-fourths to the wife, based on the coverture fraction formula, it should not "set aside" the three-fourths from the marital pot, but rather find the presumption of the equal division to be rebutted.

[16] Here, the trial court improperly excluded the premarital portion of Husband's pension from the marital pot, but it clearly considered that value in determining a just and reasonable division of the marital estate. Among other things, the trial court found that 98.8% of Husband's pension accrued before the parties' marriage, that the entire present value of Husband's pension is more than

double the value of the entire marital estate, and that both parties enjoyed the benefit of that pension throughout their twelve-year marriage. Moreover, the court found that Husband was retired and recovering from two recent cancer diagnoses, whereas Wife was still employed and had not begun to collect her T-Force pension. Notwithstanding the trial court's error, based on these considerations and the court's consideration of other factors listed in Indiana Code Section 31-15-7-5, we cannot conclude that the court abused its discretion in dividing the marital estate as it did, i.e., in essentially awarding Husband the entire present value of his pension and in disposing of the remaining assets and liabilities as specified above.[8]

## Section 2 – Any error in the trial court's failure to include Husband's IRA in the marital estate was harmless.

[17] At the evidentiary hearing, Husband testified that, on the date of filing, he had an IRA with "around three thousand" dollars that was not included on the "balance sheet" submitted to the trial court. Tr. Vol. 2 at 68. Husband's counsel told the court that his proposed findings would have "that I-R-A supplement." *Id*. at 69. But Husband's proposed findings did not mention the IRA, and Wife did not submit her own findings or notify the trial court about this omission.

---

[8] Wife criticizes the trial court's "reliance" on the QDRO relating to Husband's pension. Appellant's Br. at 35. But because this was only one of multiple factors that the court considered in determining how to divide the marital estate, we agree with Husband that the QDRO is "inconsequential" to the court's decision. Appellee's Br. at 15.

The trial court's decree did not mention the IRA, and neither did Wife's motion to correct error.

[18] On appeal, Wife argues that "the trial court's failure to include Husband's IRA in its Decree render[ed] the Decree unjust and unreasonable[.]" Appellant's Br. at 36. We disagree. Assuming for argument's sake that Wife did not waive this issue by failing to timely raise it with the trial court, we note that the value of the IRA is less than two percent of the value of the marital estate, and thus its omission was de minimis. Accordingly, we affirm the trial court in all respects.

[19] Affirmed.

Bradford, J., and Tavitas, J., concur.

ATTORNEY FOR APPELLANT

Daniel J. Borgmann
Helmke Beams LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE

Perry D. Shilts
Shilts & Setlak, LLC
Fort Wayne, Indiana